**178**

## BOGARDUS vs. TRINITY CHURCH.

A plea is not rendered double by the mere insertion therein of several aver-ments, that are necessary to exclude conclusions arising from allegations, which are made in the bill, to anticipate and defeat the bar which might be set up in the plea.

Where the complainant states a variety of matters in his bill, which, if ad-mitted to be true, would be evidence to counter-prove the allegations of the plea, it is necessary to negative such matters, by general averments in the plea, and to support the plea by an answer as to such matters.

Upon the argument of a plea, every fact stated in the bill, and not denied by the averments in the plea and by the answer in support of the plea, must be taken as true.

Where issue is taken upon a plea, if the truth of the matters pleaded are es-tablished, the suit will be barred, so far as the plea extends.

A defendant is bound to support his plea by an answer as to those circum-stances, stated in the bill, which, if admitted to be true, would be evidence to counter-prove the plea.

In setting up a defence under a public statute, it is not necessary, either in a court of equity or law, to set forth the statute in the plea. It is sufficient to state the facts which are necessary to bring the case within the opera-tion of the statute, and to insist that upon those facts the plaintiff's right or remedy is at end.

On the settlement of a new territory by a colony from another country, the colonists carry with them the general laws of the mother country, which are applicable to the situation of the colonists, and such general laws be-come the laws of the colony, until they are altered by common consent or by legislative enactment.

Where a corporation received a grant of land from the crown of Great Brit-ain, in 1705, and immediately entered by virtue thereof, claiming title to the whole premises, under the grant, adverse to the whole world, and continued such adverse possession under claim of right for sixty years; *It was held*, that such corporation acquired a perfect title to the premises cov-ered by the grant, as against the rightful owner.

Where one of several tenants in common conveys the entire premises held in common, and the grantee enters into possession under the conveyance, claiming title to the whole premises, such possession is adverse to the co-tenants of the grantor, and at the expiration of the period of limitations, their right will be barred.

August 6.    THIS case came before the court upon the defendants' plea. By the complainant's bill, he claimed as one of the descend-ants of Annetje Jans, or Bogardus, formerly wife of the Do-mine Everardus Bogardus, one undivided fifth part, of one sixth, of sixty-two acres of land, in the city of New-York, once

1833.

Bogardus
v.
Trinity Church

known by the name of the Domine's Bowery, confirmed to the children and heirs of Annetje Jans, by Governor Nicholls, in 1667. The bill alleged that the one undivided sixth part of the premises belonged to Cornelius Bogardus, the ancestor of the complainant, at the time of his death, in 1707, and was held by him as tenant in common with the corporation of Trinity Church. That upon his death, that sixth descended to his oldest son, the grandfather of the complainant, who died in 1759, intestate. That on his death, it descended to the father of the complainant, who died intestate in 1794, leaving the complainant and his four brothers and sisters his heirs at law; by which the complainant became entitled to one fifth of that undivided sixth, as tenant in common with his brothers and sisters and the corporation. The bill further stated, that in 1705 the corporation went into possession of the premises, claiming the same under a conveyance, called a deed of transport, from a part of the children and heirs of Annetje Jans to Col. Francis Lovelace, executed in March, 1671, which only conveyed to him an undivided portion of the premises, and under the mesne conveyance of a grant from the crown of Great Britain, made in 1705; whereby the corporation became a tenant in common with and trustee for Cornelius Bogardus the elder, and subsequently for his heirs at law and their heirs. And that the corporation had received a part of the rents and profits of the premises in trust for him and them, from the time of such entry, in 1705, down to the filing of the bill in this cause. The complainant, in his bill, further alleged that, in 1785, the corporation, by a committee duly authorized for that purpose, made its claim in writing to the premises under the deed of transport to Colonel Lovelace, and through the mesne conveyance of the grant from the crown. The complainant further stated that the corporation had sold certain parts of the premises and received large sums on such sales, and had released other portions thereof, reserving the rent to itself; which rent it had received as tenant in common with Cornelius Bogardus and his heirs. And the complainant prayed a discovery of all the property of the corporation, and of the rents and income of the premises in question in this cause, and of the sales there-

of; and for an account and payment of the one fifth of one sixth of the rents and profits of the premises and of the proceeds of such sales, which had been received since the entry of the corporation in 1705, or which might be due thereafter.

The defendants, as to all the relief prayed for in the bill, and as to all the discovery asked for by the complainant, except so much as related to the supposed entry of the corporation, upon the premises called the Domine's Bowery, under or by virtue of the deed of transport to Colonel Lovelace ; and so much as related to the corporation being seized or possessed, or holding the premises or any part thereof, under the deed of transport, as tenants in common with the complainant or any of his ancestors ; and so much as related to the corporation holding the premises as tenants in common with the complainant or his ancestors, under the deed of transport or the deed of confirmation from Governor Nicholls ; and so much as related to the alleged receipt of the rents and profits, avails or proceeds, of the premises in trust for or to the use of the complainant, or his ancestors ; and so much as related to the seisin of the complainant or his ancestors of any estate or interest or share of the premises in common with the corporation, or to the taking of esplees or profits thereof by the father of the complainant ; and so much as related to the written claim or communication stated in the bill to have been made by the committee of the corporation, in 1785, and the certified copy of the deed of transport enclosed therein, and to the authority of that committee ; and so much as related to the intent of that written communication, pleaded in bar, that on the 23d of November, 1705, Queen Anne being in the possession and occupation of the premises called the Domine's Bowery, and other lands in the city of New-York, and being in the receipt of the rents and profits thereof to her sole and separate use and benefit, granted the same by letters patent, under the great seal of the province of New-York, unto the corporation of Trinity Church by its then corporate name, forever, in fee simple ; that the corporation, under and by virtue of those letters patent, and not otherwise, entered upon the premises so patented, including the premises in question in this cause called the Domine's Bowery, on the day of the date

of such patent, and became seized thereof in its demesne as of fee, claiming by force and virtue of that patent, and not otherwise, to be of right sole and exclusive owners of the same and of every part thereof in fee simple; and that the corporation, from that time continually down to the time of putting in such plea, continued in the sole and exclusive possession and seisin of the premises, claiming to have and to hold the same as the sole and exclusive owner thereof in fee simple; and had during all that time been in the sole and exclusive receipt and enjoyment of the rents, issues, profits, avails and proceeds thereof, to the separate use of the corporation, claiming the right so to receive and enjoy the same; and without having paid over or accounted for to the complainant, or those under whom he claimed title, any part of such rents, issues, profits, avails or proceeds; and without having held or possessed the premises or any part thereof, or any estate therein, or any rents, issues, profits, avails or proceeds of or arising out of the same, in common or undivided with, or as trustee of the complainant, or those under whom he claimed to have derived title; and without ever having acknowledged or admitted that the corporation was bound, either at law or in equity, to pay over or account for any part thereof to the complainant, or those under whom he claimed; and without having admitted or acknowledged, by the agents of the said corporation or otherwise, that the complainant, or those under whom he claimed to have derived title, had any estate, share or interest, in common and undivided, or any other estate in the premises, or in or to the rents, issues, profits, avails or proceeds of or arising out of the same. This plea was also supported by the answer of the defendants, as to all the discovery not covered by the plea and excepted in the commencement thereof; containing a general and particular denial that the corporation ever entered or claimed under the deed of transport, or under any of the children or heirs of Annetje Jans; or that the corporation was, or that by itself or its agents it ever admitted itself to be tenant in common with the complainant, or those under whom he claimed; or that it had received the rents, profits, avails or proceeds of the premises or any part thereof as tenant in common, or in trust, or for the

use of the complainant or those under whom
had admitted that he or they had any right or n
premises, or the rents or proceeds thereof; or that u.
of the complainant ever took any esplees or profits thei.
common with the corporation; or that either the complainan.
or his ancestors, or any descendant of Annetje Jans, ever en-
tered upon and became seized of any estate or interest in the
premises in common with the corporation; or that the com-
mittee of the corporation were authorized to admit, or ever in-
tended to admit or to claim, that the corporation held or pos-
sessed the premises, or any part thereof, under the deed of
transcript.

*B. F. Butler & S. A. Talcott*, for the defendants. The
plea put in by the defendants, if good, will protect them from
any farther discovery, and will be a bar to all the relief asked
for by the bill. It is now settled that the matters set up in this
plea may be pleaded. (*Beames*, 3 to 7, 29, 30, 33. *Mitford's
Pl.* 241 to 244, 260 to 265, 271, 276, 298.) Adverse posses-
sion may be set up in an answer. It is better however to
plead it, as this mode of making a defence saves expense.
A plea reduces the matters in controversy in a cause to a sin-
gle point. Here that point is the character of the defendants'
possession; the issue tendered is, that the defendants have
held adversely to the title of the complainant, and those un-
der whom he claims, since 1705. As the bill anticipates the
defence and sets up facts to defeat it, the plea by general
averments denies the facts so set up, and an answer in sup-
port of the plea has been put in. (*Fith* v. *Courtney, Rep.
temp. Finch*, 336. *Peacock* v. *Neils, Id.* 266. *Saunders* v.
*Hord,* 1 *Chancery Rep.* 184. *Lowe* v. *Burrow,* 3 *Peer Williams,*
262. *Jermy* v. *Best,* 1 *Simon's Rep.* 373. *Aggas* v. *Pickerell,* 3
*Atk.* 224. *Blewitt* v. *Thomas,* 2 *Vesey, jun.* 669. *Williamson* v.
*Hadfield, cited in* 1 *McClelland & Young's Rep.* 321. *Lake* v.
*Thomas,* 3 *Vesey, jun.* 17. *Crow* v. *Tyrrel,* 3 *Mad. Rep.* 179.
*Hony* v. *Hony,* 1 *Sim. & Stu. Rep.* 568. *Arnold* v. *Heaford,*
1 *M'Clel. & Young's Rep.* 331.) These cases show that this
defence is properly made by plea. The bill does not allege
that the ancestor of the complainant labored under any disa-

bility. There is a class of pleas of title only. (*Beames*, 254 to 256. *Howe* v. *Duppa*, 1 *Ves. & Bea.* 511. *Gait* v. *Osbaldeston, Russell's Rep.* 158. *Leigh* v. *Leigh*, 1 *Sim. Rep.* 349. *Marquis of Cholmondeley* v. *Lord Clinton*, 2 *Merivale*, 171, 9. *Turn. & Russ.* 107, *S. C.*) A long peaceable possession may in equity be pleaded in bar to such a bill as the complainant's. (*Mitf. Pl.* 219. *Lube on Pleas*, 232 to 236.) Whatever destroys the complainant's right of action may be pleaded in bar. (1 *Simon's Rep.* 58. *Beames*, 164.) The rules of equity pleading have been adopted in analogy to those which prevail at law. (*Beames*, 7.) The defendant's plea is good, both in form and substance. It sets forth all the facts necessary to constitute a legal adverse possession. It avers that Queen Anne, on the 23d November, 1705, being in the possession of the premises in question, and in the receipt of the rents and profits thereof to her sole and separate use, granted the premises by letters patent to the defendants in fee simple ; that the defendants entered under and by virtue of the said letters patent on the day of its date, claiming to be exclusive owners of the premises in fee simple ; and that the defendants have, ever since their said entry, continued in the sole and exclusive possession thereof, claiming to hold the same as exclusive owners, and have during all that time been in the sole and exclusive receipt of the rents and profits, without admitting or acknowledging the title of the complainant or his ancestors to any part of said premises, or to the rents thereof. This plea is supported by an answer as to all the discovery not covered by the plea. The adverse possession set up in the plea gives the defendants a perfect and indefeasible title to the premises in question, and bars all the right of the complainant, if he or his ancestors ever had any. The provision in the statute of 1704, which restricted the defendants to property of the annual income of £500, did not incapacitate the corporation from disseising or ousting the complainant or his ancertors. There is a distinction between an incapacity to hold property beyond a certain amount and that of a corporation to take by devise under a will. In the latter case, there is an entire want of power both to devise and to take, the prohibition being in the statute of wills. The sole authority to devise being derived from the statute

of wills, a devise not authorized by that statute is absolute-ly void. But a grant to a corporation is not absolutely void; it is only voidable. Here the corporation had originally the capacity to take. The restriction as to the amount of property it was permitted to hold was strictly of a governmental character. The government alone could take advantage of a violation. It was like a grant to an alien. An alien can take and may hold land until the people interpose. The grantor cannot reclaim it. Whoever can take or hold by deed may take and hold by adverse possession. It has been decided that a monk who, being *civiliter mortuus,* could not hold real estate, might be a tenant to the *præcipe* in a common recovery. (*Thornby* v. *Fleetwood,* 10 *Mod. R.* 114, *and note.*) When this corporation went into possession of the premises in question, the common law doctrine relative to corporations and their powers was in force in the colony of N. York. Corporations were then created by charter from the crown; and they could at that time, at common law, hold real estate. Restrictions upon corporations as to holding real estate were imposed by the statutes of mortmain. The general result of these statutes was a prohibition against corporations holding real estate unless they obtained a license from the crown. (1 *Kyd on Corp.* 39, 41. 1 *Bl. Com.* 472, 6. 2 *Kent's Com.* 227, 9. 2 *Id.* 268.) This license might be contained in the grant itself. A grant of land implies a license. Even a mere grant of land by the crown to a body of men has been held to create a corporation. (*Mildmay* v. *Standish, Cro. Eliz.* 35. 1 *Kyd on Corp.* 6, 52, 62, 63. *Denton* v. *Jackson,* 2 *John. Ch. R.* 320. *Hempstead* v. *Hempstead,* 2 *Wendell,* 109. *Society for Prop. of Gospel* v. *Town of Pawlet,* 4 *Peters' Rep.* 502, 4.) A patent of land to an Indian and his heirs and assigns forever gives him the title, no matter what his civil condition and character may be, whether an alien or citizen; and it gives him a right to transmit the land to his heirs. It is equivalent to a legislative grant. (*Goodell* v. *Jackson,* 20 *John. Rep.* 693. *Jackson* v. *Lervey,* 5 *Cowen,* 397.) The grant of 1705, of Queen Anne, was in itself a license to the defendants, as a corporation, to hold the lands granted. But the annual income of all the lands and personal property of the defendants did not exceed £500, until long

after the title of the defendants to the premises in question became perfect, and the right of the complainant and his ancestors had become barred. Lord Coke laid down the rule, in giving a construction to the general statute of Elizabeth as to endowment of hospitals, that should the property granted subsequently rise in value, and in consequence of its appreciation exceed the amount prescribed in the restriction, the title of the corporation to the property granted would not be destroyed. (2 *Institutes*, 722.) Long previous to 1785, the complainant's ancestor was barred, not only of his right of entry, but of his writ of right by an adverse possession of sixty years. The act of 1784, relative to this corporation, repeals the restriction contained in the statute of 1704, and authorized it to hold property of the annual income of £5000. There is no allegation in the bill that the income exceeded £500 previous to the year 1785. The English statute of limitations, of 21 *James* 1, *c.* 16, was in force in this state when a colony. (*Commonwealth* v. *Leach*, 1 *Mass. Rep.* 61. *Commonwealth* v. *Knowlton*, 2 *Id.* 535. *Report of the Judges*, 3 *Binney*, 596.) And courts of equity have always considered the provision in that statute, which applied to rights of entry, and in which the period of limitation was twenty years, as that by which they were bound. (*Marquis of Cholmondeley* v. *Lord Clinton*, 2 *Jac. & Walk.* 192.) For writs of right, parties were compelled to go to a court of law. (*Hovenden* v. *Lord Annesley*, 2 *Sch. & Lef.* 607. *Elmendorf* v. *Taylor*, 10 *Wheaton*, 152.) Colonists carry with them the laws of the mother country, and they are binding upon the colony without being re-enacted. (*Boehm* v. *Engle*, 1 *Dallas*, 15, 64.) The right of entry of the complainant's ancestor was barred in 1725. Even if we admit that this corporation was a co-tenant with Cornelius Bogardus in 1705, it will not avail the complainant, as the rule is well established, that if one tenant in common enters claiming the whole to himself, and holds adversely for twenty years, he will acquire the title. A possession under a rightful claim is not necessary to give a perfect title. A mere claim of title is sufficient, although made under a defective deed. (*Jackson* v. *Smith*, 13 *John. Rep.* 406. *Clapp* v. *Bromagham*, 9

Cowen, 551. Bradstreet v. Huntington, 5 Peters, 402. Culler v. Motzer, 13 Serg. & Rawle, 356. Prescott v. Nevers, 4 Mason, 326.) We stand in the same situation as if the crown had never originally granted the lands in question. Before the revolution, the fee was in the crown by right of sovereignty ; and the defendants, holding as tenants in capite to the crown, could not hold in trust for any other person. (Blight's lessee v Rochester, 7 Wheaton, 535. Soc. for Prop. of Gospel v. Town of Pawlet, 4 Peters' Rep. 506, 7. Bradstreet v. Huntington, 5 Id. 439, 440, 1.) We claim title from the lord of the whole territory—the supreme owner. The defendants' entry and sole possession, and exclusive receipt of the rents, and the omission of the complainant's ancestors to make their claim, amounted to an ouster, and created an adverse possession even if the defendants originally held in common with the complainant's ancestors. (Doe v. Prosser, Cowper's Rep. 217. Jackson v. Brink, 5 Cowen's Rep. 483. Jackson v. Whitbeck, 6 Id. 632. Jackson v. Tibbits, 9 Id. 241. Clapp v. Bromagham, Id. 551. M'Clung v. Ross, 5 Wheaton, 124. Van Dyk v. Van Beuren, 1 Caines' Rep. 83.) Where one tenant in common conveys the whole estate as if he was the sole owner, such conveyance creates an adverse possession in the grantee who enters and claims under such conveyance. (Jackson v. Smith, 13 John. Rep. 406.) The grant of the crown in 1705, therefore, even if a tenancy in common then existed, created an adverse possession in the defendants. There could have been no trust in favor of the complainant or his ancestors ; and the court must hold that the statute of limitations is now a bar to any right which the complainant's ancestors may have had. (Hovenden v. Lord Annesley, 2 Sch. & Lef. 630, 3. Beckford v. Wade, 17 Ves. 96. Dowling v. Foxall, 1 Ball & Beat. 195. Kane v. Rloodgood, 7 John. Ch. Rep. 111. Sherwood v. Sutton, 5 Mason, 143. Skirme v. Meyrick, 2 Comyn's Rep. 711.) Wherever a demand is merely legal, a court of equity always applies the statute bar ; and in all cases of merely equitable demands, the court acts from analogy to law. (Prince v. Heylin, 1 Atk. 493. Bond v. Hopkins, 1 Sch. & Lef. 413. Hovenden v. Lord Annesley, 2 Id. 633. Marquis of Cholmondeley

v. *Lord Clinton*, 2 *Merivale*, 171, 9. 2 *Jac. & Walk.* 1, *S. C. Demarest* v. *Wynkoop*, 3 *John. Chan. Rep.* 129. *Elmendorf* v. *Taylor*, 10 *Wheaton*, 168.) But independent of the statute of limitations, the mere lapse of time is a bar to the complainant's title. (*Marquis of Cholmondeley* v. *Lord Clinton*, 2 *Meriv.* 171. *Harmood* v. *Oglander*, 8 *Vesey*, 117. *Pickering* v. *Lord Stamford*, 2 *Vesey*, *jun.* 280. *Hercy* v. *Dinwoody*, *Id.* 91. 4 *Brown's Ch. Cas.* 639.) A court of equity always refuses to lend its aid to a party who has slept upon his rights, and where his demand has become stale. (*Foster* v. *Hodgson*, 19 *Vesey*, 184. *Hodle* v. *Healey*, 1 *Ves. & Bea.* 539. *Roche* v. *Morgell*, 2 *Sch. & Lef.* 724, 5. *Langston* v. *Boylston*, 2 *Ves. sen.* 109. *Aggas* v. *Pickerell*, 3 *Atk.* 225. *Smith* v. *Clay*, 3 *Brown's Ch. Cas.* 639. *Foster* v. *Hodgson*, 19 *Ves.* 184. *Bowers* v. *Cator*, 4 *Id.* 91.) And if we can look back to the pleading in which the first fault was committed, we shall find that the complainant's bill does not show sufficient to entitle him to the relief prayed for. The cause is to be argued as if a demurrer had been interposed to the defendants' plea. From the statements of the complainant in his bill, it appears that his title has been barred. The defence tends to one point— that of a continued adverse possession. This furnishes a foundation for the defence of the statute of limitations, as well as of a bar of the complainant's title by lapse of time. There are cases where a statute bars a demand which would not be barred by mere lapse of time. (*Poter* v. *Hubbert*, 2 *Chan. Cas. or Rep.* 44. *St. John* v. *Turner*, 2 *Vernon*, 418. *Pooley* v. *Ray*, 1 *P. Wms.* 355. *Deloraine* v. *Browne*, 3 *Brown's Ch. Cas.* 633. *Hercy* v. *Dinwoody*, 4 *Id.* 268. *Jones* v. *Turberville*, 2 *Ves. jun.* 13. *Burke* v. *Crosbie*, 1 *Ball & Beat.* 489. *Earl of Egremont* v. *Hamilton*, 1 *Id.* 516, 531. *Widdowson* v. *The Earl of Harrison*, 1 *Jac. & Walk.* 528. *Marquis of Cholmondeley* v. *Lord Clinton*, 2 *Id.* 1. *Hicks* v. *Cooke*, 4 *Dow's Par. Rep.* 17. *Ray* v. *Bogart*, 2 *John. Cas.* 432. *Shaver* v. *Radley*, 4 *John. Ch. Rep.* 310. *Phillips* v. *Prevost*, 4 *Id.* 205. *Livingston* v. *Livingston*, 4 *John. Ch. R.* 294. *Cohens* v. *Virginia*, 6 *Wheat.* 281. *Thomas* v. *Harvie's heirs*, 10 *Id.* 146. *Chalmer* v. *Bradley*, 1 *Jac. & Walk.* 51.) The defendants can also call to their aid the doctrine of presumption. For 130 years, the de-

fendants have been in exclusive possession, without any claim of title on the part of the complainant or his ancestors. From such a possession, for such a length of time, the court will presume a grant to the defendants from those under whom the complainant now claims title. (*Starkie's Ev. pt.* 4, *p.* 1218 *to* 1232. *Hillary* v. *Waller,* 12 *Vesey,* 265. *Jackson* v. *Lunn,* 3 *John. Cas.* 109. *Jackson* v. *M'Call,* 10 *John.* 377. *Jackson* v. *Moore,* 13 *Id.* 513. *Jackson* v. *Russell,* 4 *Wendell's R.* 548. *Kingston* v. *Lesley,* 10 *Serg. & Rawle,* 383. *Arnold* v. *Heaford,* 1 *M'Clel. & Young,* 325. *Hillary* v. *Waller,* 12 *Vesey,* 251, 2. *Holmes* v. *Coghill,* 12 *Id.* 206, 7. *Giles* v. *Baremore,* 5 *John. Ch. Rep.* 550, 1. *Jackson* v. *Lunn,* 3 *John. Cas.* 117. *Schauber* v. *Jackson,* 2 *Wend. Rep.* 36. *Doe* v. *Butler,* 3 *Id.* 152, 3. *Noble* v. *M'Micken,* 9 *Martin,* 188, 9.) The law will presume a conveyance, from the length of possession, although the court should believe there had been none. (*Giles* v. *Baremore,* 5 *John. Ch. Cas.* 554. *Livingston* v. *Livingston,* 4 *Id.* 296.) Presumptions of law need not be pleaded. (1 *Chitty's Pl.* 226.) Presumption of a deed is matter of law. (*Stoever* v. *Whitman's lessee,* 6 *Binney's Rep.* 419.) The presumption of a grant, from a party out of possession, is raised where his conduct is such that it cannot be accounted for, except by supposing that he had conveyed to the party in possession. But for all the purposes of a defence to this suit, an adverse possession of one year suffices. This is not a bill in aid of a suit at law, or for discovery. But it is purely a bill for relief. The rule is, that where no action of account cannot be maintained at law, none can be maintained in chancery. And it is a settled rule at law that a tenant in common cannot maintain an action for an account against his disseisor. This bill, therefore, being for an account, cannot be sustained. Whenever the question in controversy is a legal question merely, this court will not interfere, until the title is established at law. (1 *Institues,* 2, *a.* 1 *Selw. N. P.* 1. 1 *Jacob. Rep.* 284. *Coysgarne* v. *Jones, Amb.* 613. 1 *Jac. Rep.* 349. *Goodinge* v. *Goodinge,* 1 *Ves. sen.* 232. 1 *Vin. Abr. tit. Account,* 185, *pl.* 9. 1 *Atk.* 321. *Hutton* v. *Simpson,* 2 *Vernon,* 724. *Wilkin* v. *Wilkin,* 1 *John. Ch.* 111. *Clapp* v. *Bromagham,* 9 *Cowen,* 530. 2 *R. S.* 317,

§ 1. *Norton* v. *Frecker,* 1 *Atk.* 524.) The complainant must bring the proper action at law to establish his title, before he invokes the aid of this court. This court will not try questions of title merely.

It is objected that the plea does not deny that the amount of the income of the corporation exceeded 500 pounds. This, we insist, was not material. But even if it was, the omission does not vitiate the entire plea. A plea in equity may be good in part, and bad in part; and it will stand for what it is good. (*French* v. *Shotwell,* 4 *John. Ch.* 505. 5 *John. Ch.* 555, 569, *S. C.* 20 *John. Ch.* 668, *S. C.*) It is said the answer is not sufficiently explicit. An answer may be sufficient to support a plea, and still may be liable to exception, so far as it goes to the discovery. (*Mitf. 3d ed.* 241.) The plea does not overrule itself, by answering by negative averments what it professes not to answer. (*Blewitt* v. *Thomas,* 2 *Ves. jun.* 669. *Appen. to Beames,* 337.) All the precedents of pleas to be found in *Beames* have been sanctioned by judicial decisions. A precedent like the present plea is there to be found. In the averments in a plea, only a general denial is necessary. (*Kemp* v. *Pryor,* 7 *Ves.* 245. *Jones* v. *Pengree,* 6 *Id.* 585. *Goodrich* v. *Pendleton,* 3 *John. Ch.* 397.) If the answer in support of a plea is not sufficient, it may be excepted to. (*Jones* v. *Pengree,* 6 *Ves.* 580, 584, 5. *Beames,* 344. *Wallwin* v. *Lee,* 9 *Ves.* 24. *Willis' Plead.* 49. *Goodrich* v. *Pendleton,* 3 *John. Ch.* 393. *Allen* v. *Randolph,* 4 *Id.* 693.) A plea must cover all the matters of the bill which are not excepted. The plea here is sufficiently certain. It covers all which is not answered. It is always necessary to look into the bill to see the extent of the plea. (*Howe* v. *Duppa,* 7 *Ves. & Bea.* 511. *Cunningham* v. *Wegg,* 2 *Brown's Ch. Cas.* 241. *Beames,* 337, 344. *Blewitt* v. *Thomas,* 2 *Ves. jun.* 669. *Harley* v. *Russell,* 2 *Sim. & Stu.* 244. *Watkins* v. *Stone, Id.* 564.) These cases show that this plea is sufficiently certain. The plea covers every thing in the bill, except the matters excepted in the introductory part of the plea, as to which there is a general denial in the plea and answer. Exceptions in a plea do not render it uncertain; and immaterial matters in a bill do not require an answer. (*Wing* v. *Murrells,* 11 *Price,*

725.　*Morrison* v. *Turnour*, 18 *Ves.* 182.　*Mountford* v. *Scott*, 3 *Mad. Rep.* 37 or 56.　*Hicks* v. *Raincock*, 1 *Cox*, 40.)　All the facts in the plea converge to one point; it is not double. But although the facts in the plea tend to one point, still various reasons may be urged in its support.　The plea contains substantially a denial of the power of the complainant to call on the defendants to account.　Pleas which are directly negative are now held to be good.　The defendant's plea is a negation of a distinct affirmative proposition.　The validity of such a plea never was doubted.　(*Beames*, 126, 128, 129.　*Hall* v. *Noyes*, 3 *Brown's Ch. Cas.* 487.　*Lord Redesdale's Trea. on Plead.* 3d ed. 187, 8.　*Beames*, 130.)　A different rule would enable a complainant, by falsely alleging title in himself, to compel an answer from the defendant as to the circumstances of his whole title.　The defendant has a right to meet the complainant at the threshold, and say he has no title ; as we have done in this suit, by denying that the complainant is a tenant in common with the defendants.　(*Randal* v. *Head*, *Hardres' Rep.* 188.　*Marquis of Donnegal* v. *Stewart*, 3 *Ves. jun.* 446. *Phillips* v. *Prevost*, 4 *John. Ch.* 214.　*Murray* v. *Coster*, 4 *Cowen*, 641.)　This rule is applicaple to a defence under the statute of limitations.　(*Drew* v. *Drew*, 2 *Ves. & Bea.* 159.)　The grant of Queen Anne was a sufficient colour of title, under which an adverse possession might commence.　A corporation may be a disseisor. (*Riddle* v. *Proprietors, &c. of Merrimack river*, 7 *Mass. Rep.* 182, 6.　*Busk* v. *Bell*, 16 *East*, 5.　*Lyman* v. *The White River Bridge Co.*, 2 *Aiken's Rep.* 257, 8.) A disseisin may be either by fraud or violence.　It may be without colour of title.　(*Brooke's Abr. lit. Disseisin, pl.* 65.) Where the king enters without title and grants, the patentee will be the disseisor, and not the king.　(*Pignard* v. *Smith*, 6 *Pick. Rep.* 172.)　The grant of the queen contains the words give and grant, which import a warranty.　The defendants' possession is therefore one of the strongest cases of an adverse possession.　An actual disseisin is not necessary to oust a tenant in common.　Here the defendants entered under a grant for the entirety, claiming the whole estate to themselves; which was inconsistent with the idea of there being any tenancy in common between the defendants and any other person.　(*Bradstreet* v. *Huntington*, 5 *Peters' Rep.* 443.

*Clapp* v. *Bramagham,* 9 *Cowen,* 551.) The statute of limita-
tions need not be referred to in a plea. (*Prince* v. *Heylin,* 1
*Atk.* 493. *Lawes on Pl. in Assumpsit,* 723.) All that is ne-
cessary is to plead the facts upon which the statute operates.
(*Beames,* 164. *French* v. *Davidson,* 3 *Mad. Rep.* 397. *Jones*
v. *Givin, Gilb. Eq. Rep.* 224. *Low* v. *Burron,* 3 *P. Wms.* 265.
*Kane* v. *Bloodgood,* 7 *John. Ch.* 113. *Baylis* v. *Attorney Gen-
eral,* 2 *Atk.* 240. *Hovenden* v. *Lord Annesley,* 2 *Sch. & Lef.*
607.) Twenty years adverse possession is sufficient to bar
equitable titles. (*Sugden's Appen.* 570.) The committee of
the defendants, who sent the letter stated in the bill, acted
without authority. The letter contains no admissions of any
tenancy in common. The defendants' title was complete in
1765, and nothing but a conveyance could restore it to the
claimants. A tenant in common, receiving rent by, does not
create such a trust as to take the case out of the statute of limi-
tations. (*M'Euen* v. *Girard,* 2 *Rawle,* 315. *Murray* v. *Cos-
ter,* 20 *John. Rep.* 576. *Wisner* v. *Barnet,* 4 *Wash. C. C. Rep.*
631. *Kane* v. *Bloodgood,* 7 *John. Ch.* 119, 20. *Brigham* v.
*Eveleth,* 9 *Mass. Rep.* 538, 540. *Sargent* v. *Parsons,* 12 *Id.*
149. *Prince* v. *Heylin,* 1 *Atk.* 493.) The rents cannot be
separated from the land. Can the complainant recover the
proceeds of that to which he has lost all title? Rent is inci-
dent to the reversion. Can a party lose the principal and re-
tain the incident? (*Frique* v. *Hopkins,* 16 *Mart. Lou. R.* 212.
*Vin. Abr. tit. Account, D. a. pl.* 7.)

*H. W. Warner & G. Sullivan,* for the complainant. Pleas
in equity are not favored. They are only proper where the
matters in controversy can be brought to a single point. Uni-
ty is indispensable in a plea. (*Mitf.* 238.) We have been
told that this is a plea of the statute of limitations, of a disse-
sin, of a presumption of a grant, and of lapse of time. Can it
then be a single plea? The plea cannot be sustained as a
plea of the statute of limitations; such a plea is never favored,
because it is founded upon the idea of doing wrong. At law
you are not permitted to amend a plea of this kind; and the
general issue will not be allowed to be withdrawn, in order to
plead it. (*Perkins* v. *Wright,* 3 *Har. & M'Hen. Rep.* 327.
*Coit* v. *Skinner,* 7 *Cowen,* 401. *Hallagan* v. *Golden,* 1 *Wen-*

*dell,* 302. *Fox* v. *Baker,* 2 *Id.* 244.) It does not appear by this plea whether it is a plea of the statute of limitations, or of title by long possession. A plea of the statute of limitations must be strictly pleaded. It must be confined to the letter of the statute. It must specify the number of years, to show it is founded on the statute. (*Dey* v. *Dunham,* 2 *John. Ch. R.* 191. *Goodrich* v. *Pendleton,* 3 *Id.* 384. *Hinsdale* v. *Miles,* 5 *Conn. R.* 335. *Hudsons* v. *Hudsons'* adm'r, 6 *Munf.* 356. *Brown* v. *Jones,* 2 *Gall.* 477.) At law, in a plea of the statute of limitations, the number of years which bars the plaintiff's demand, are specified. There are two kinds of pleas in equity. The one brings forward new matter; the other is a negative plea, founded upon the bill. The latter makes a new case out of old matter. And to be good, it must be to the case made by the bill. The present plea excepts several matters in the bill as to which it does not extend. It divides sentences. A plea should divide topics of equity, not sentences. We make our case; the defendants must follow us. This they have not done, as their plea is not to the case made by our bill. The exceptions in the plea render it uncertain. The plea tenders no issue. A plea must be such that the complainant can take issue on it. (*Mitf.* 240.) On a negative plea, the only matters in issue are the negative averments. (*Thring* v. *Edgar,* 2 *Sim. & Stu.* 274.) Here there can be no negative averments, as all the matters in the bill which are important, are reserved for the answer. A plea is bad, unless it makes a new case; if it does not, it only amounts to a demurrer. A plea, to be good, must be to the whole case made by the bill; to the discovery as well as to the relief. The negative averments of a plea must be to the facts which go to destroy the plea; and therefore it is, that parts of a bill cannot be selected to which no plea is made, and the rest pleaded to. This plea is not to the whole bill, not being to the whole discovery, but only to the relief. The discovery being ancillary to the relief, the not answering the discovery admits the right to it, and overrules the plea. The plea is bad, because it does not profess to answer the whole bill. A plea must be a complete defence, per se. The averments of the plea must cover the whole case made by the bill, and the discovery

must be co-extensive with the plea. (*Hore* v. *Parker*, 1 *Cox's Cas.* 224. *Roche* v. *Morgell*, 2 *Sch. & Lef.* 721. *Parker* v. *Alcock*, 1 *Young & Jer.* 432. *Bayley* v. *Adams*, 6 *Ves.* 586. *Attorney General* v. *Master*, &c. of the *Skinners Co.*, *Mad. R.* 203. *Allen* v. *Randolph*, 5 *John. Ch. R.* 693.) Every allegation in the bill not denied by the plea is admitted to be true. (*Mitf.* 198, 242. *Watkins* v. *Stone*, 2 *Sim. & Stu.* 572. *Goodrich* v. *Pendleton*, 3 *John. Ch. R.* 384.) The answer in support of the plea must be to the same parts of the bill as the negative averments. The answer here being to a distinct part of the bill from the plea, it does not support the plea. (*Pennington* v. *Beechey*, 2 *Sim & Stu.* 282. *Mitf.* 199, 241.) If the answer leaves the truth of the plea doubtful, the plea must be overruled for want of verity. The answer contradicts the plea. It also overrules the plea. It answers beyond the plea to matters excepted and not covered by the plea. If an answer in support of a plea goes beyond it, it overrules the plea. So an answer to matters, which the plea ought to cover and does not, overrules the plea. (*Watkins* v. *Stone*, 2 *Sim. & Stu.* 572.) Here, also, as the answer to the bill admits the right to relief, it for that cause overrules the plea. This is not a case for a plea. The plea alleges an entry under a grant. A grant disseises no one ; it only operates upon the title of the grantor. (*Cruise*, 32, *tit. Deed*, *ch.* 6, *sec.* 43, 45, 47.) The king cannot be a disseisor. He does not pretend to know what he grants. His grants are set aside for mistake. Any recognition at any time in favor of one having the title, gives character to the possession. Subsequent to the recognition of the complainant's title by the defendants, they could not acquire a title by possession.

The case upon the plea is the only case before the court. Every thing not covered by the plea, and not included in the negative averments, is admitted by the plea. Several material matters in the bill are not denied in the plea. There must have been an actual disseisin by the defendants to acquire the right of Cornelius Bogardus. The plea ought to have denied his seisin. By not doing so, it admits that the legal and actual seisin was in him. The defendants must show an actu-

1833.

Bogardus
v.
Trinity Church

al ouster of the complainant's ancestor, to make out an adverse possession. The defence set up is not the subject of a plea being matter of law. When the defendants entered, they entered as tenants in common with Cornelius Bogardus. The tenancy in common continued as long as they admitted the seisin of Cornelius Bogardus. They put themselves upon their long possession and exclusive receipt of the rents. There can be but one seisin; and the possession of one tenant in common is the possession of his co-tenants. The acknowledgment of the complainant's title, contained in the letter of the committee of 1785, relates back to the time of the entry of the defendants. The restriction in the defendants' charter disenabled them from ousting the complainant's ancestor, or from acquiring title by adverse possession; it also rebuts the idea of the presumption of a grant. Such a presumption would be against law.

Where there is a clear case of equity, a bill will not be dismissed on the mere ground of the staleness of the claim. Even if the legal title is doubtful, the multiplicity of suits which would be necessary to recover the premises in question entitle us to come into chancery for relief. The defendants have received the rents as trustees. If the court has jurisdiction for one purpose, it has for all purposes.

THE CHANCELLOR. The complainant's counsel have made several objections to the form of the plea in this case, which it is proper should be disposed of before I proceed to consider the question whether the matters alleged in the plea are sufficient, in substance, to bar the complainant's title to relief. The first objection to the plea, in point of form, is, that it is multifarious or double, and does not rest the defence upon a single point. I think this objection is untenable. It is the pleading of a double bar which constitutes duplicity in a plea. But a plea is not rendered double by the mere insertion of averments therein, which are necessary to exclude conclusions arising from allegations, in the bill, intended to anticipate and defeat the bar which might be set up in the plea. The object of the pleader, in the present case, appears to have been to rest his defence upon the point that the corporation

entered into possession of the premises, as early as 1705, under a grant from the crown, purporting to convey the whole property in fee, claiming title to the whole ; and that it had continued in the exclusive and uninterrupted possession under such adverse claim from that time down to the present, a period of 125 years before the commencement of the suit. But as the complainant had stated a variety of matters, in his bill, which, if admitted to be true, would be evidence to counter-prove the allegation of an adverse entry under claim of title, and of an adverse holding, it became necessary to negative those matters by general averments in the plea, and to support the plea by an answer as to those matters. (*Mitf.*, 4 *Lond. ed.* 240, 271. 1 *Brown's Ch. Pr.* 332, 338. *Sanders* v. *King, Mad. & Geld. Rep.* 65.) In the case of *Bailey* v. *Adams,* (6 *Ves. jun.* 593,) Lord Eldon doubted whether it was necessary to insert negative averments in the plea, as well as to support the same by an answer, denying all the matters stated in the bill as evidence to displace or defeat the bar set up by the plea; and, as was usual with him, in such cases, he left the question undecided. But Lord Redesdale, whose opinion upon a case of equity pleading is always esteemed the highest authority, says: "Upon argument of a plea, every fact stated in the bill, and not denied by the answer in support of the plea, must be taken for true. The plea therefore to the relief, (of a stated account) ought to have averred that the accounts settled included all dealings between the parties; that the accounts were just and fair, and that the balance as stated was justly due; and these averments ought to have been supported by an answer to the same effect," &c. (*Roche* v. *Morgell,* 2 *Sch. & Lef.* 726.) Again; in his Treatise on Pleading, he says: "Nothing can be in issue on the plea but what is contained in the plea; and every charge in the bill, not negatived by the plea, is taken to be true on the argument of the plea." (*Mitf. Pl.,* 4 *Lond. ed.* 243. *See also Gilb. For. Rom.* 58. 3 *John. Ch. Rep.* 391.) Indeed, it seems strange that any doubt should ever have existed on this subject; for it is well settled that when issue is taken upon a plea, either in the first instance, or after it has been allowed upon argument, if the truth of the matters pleaded is

1833.

Bogardus
v.
Trinity Church

established, the suit is barred, so far as the plea extends. (1 *Newl. Pr.*, 3 *Lond. ed.* 165. *Gilb. For. Rom.* 95. 1 *Mitf. Pl.* 241) If, therefore, the defendant was not bound, by averments in his plea, to negative the allegations in the bill, inserted for the purpose of anticipating and displacing the bar, the complainant would frequently be compelled to rely upon the defendant's oath, alone, for the evidence of the truth of such allegations; and he would have no opportunity to contradict that oath, under the issue joined upon the plea. If that course of pleading was adopted, the whole plea might be true, although the answer in support of such plea was absolutely false, and could be proved to be so, if an opportunity was afforded to the complainant for that purpose.

Again; it is supposed by the complainant's counsel that the defendants have overruled their plea, by answering to certain matters covered by the same. By a reference to the commencement of the plea, however, it will be seen that it is pleaded as a bar to all the relief prayed by the bill, but is only pleaded as a bar to the discovery in part; and that the discovery, as to all the matters necessary to be answered to rebut the presumption that the corporation took possession of or held the premises, or any part thereof, as tenants in common with the complainant, or his ancestors, is expressly excepted. The answer can only overrule the plea when it relates to matters which the defendant, by his plea, declines to answer, submitting himself to the judgment of the court, whether, if the allegations in the plea are true, he ought to be compelled to answer as to those matters. But here the defendants were bound to support their plea, by an answer as to the circumstances stated in the bill, from which it might be inferred that the corporation did not enter exclusively under the grant of Queen Anne, claiming title to the whole premises; and as to any other circumstances which would, if admitted, be evidence to counter-prove the plea, by showing that the corporation entered and held the premises as tenant in common, and not adversely to the title set up by the complainant, or that the rents and profits, or a part thereof, were received as a tenant in common, or trustee for the complainant, or his ancestors under whom he claimed to have derived title. (*San-*

*dcrs* v. *King, Mad. & Geldart's Rep.* 64. *Thring* v. *Edgar*, 2 *Sim. & Stuart's Rep.* 281.) They have therefore, in making their defence by way of plea, very properly pleaded it in bar of the whole relief sought by the complainant's bill, but only in bar of the discovery as to such matters as were not necessary to be answered and denied for the purpose of supporting the plea as a bar to the relief. The answer, then, as to these excepted matters, put in for the purpose of discovery merely, and in support of the plea which does not profess to cover that discovery, cannot overrule the plea, but it is entirely consistent therewith.

It is objected that the plea is not sufficiently supported. The only way of testing the sufficiency of an answer, in such a case, is to consider every allegation in the bill as true which is not sufficiently denied by the answer ; and then to inquire whether, those facts being admitted, the plea is a sufficient bar to the claim of the complainant for relief. This objection, therefore, necessarily connects itself with the merits of the defence set up in the plea, and will be examined in that connection. I shall therefore proceed to consider the merits of this case as presented by the bill and plea.

In setting up a defence under a public statute, it is not necessary, either in this court or in a court of law, that the pleader should set forth the statute in his plea ; or that he should allege the existence of a statute of which the court is bound to take notice judicially. It is sufficient for him to state the facts which are necessary to bring the case within the operation of the statute, and to insist that upon those facts the plaintiff's right or remedy is at an end, or never existed. The court will then judicially notice the existence of the statute, and declare its legal effects upon the case as made by the pleadings. Although it is usual to set forth the statute in the plea, yet Lord Redesdale, as well as Mr. Beames, have considered it unnecessary. And they both state that the substance of the plea consists in the averment of matters which are necessary to bring the case within the particular statute. (*Mitf.* 258. *Beames' Pl. in Eq.* 164.) Indeed, it seems more appropriate, in this court, to plead the facts merely which bring the case within the operation of the principle of the statute, than to

plead the statute, in terms, as a bar. The statutes of limita-
tion which must govern this case, do not in terms apply to
suits in equity. They only profess to bar legal remedies; al-
though this court, whenever the complainant's claim is found-
ed upon a legal right, always acts in obedience to the rule
prescribed by the legislature for the government of courts of
law. At the time the corporation went into possession of the
Domine's Bowery under the grant from Queen Anne, in
1705, the law of limitation as adopted in England, by the
statutes, *32 Henry 8, ch. 2, and 21 James 1, ch.* 16, consti-
tuted a part of the law of the colony of New-York; being
brought hither by our ancestors, who emigrated to this coun-
try from England, where these statutes were then in force,
and settled in this state as an English colony. It is a natural
presumption, and therefore is adopted as a rule of law, that on
the settlement of a new territory by a colony from another
country, especially where the colonists continue subject to the
same government, they carry with them the general laws of
the mother country which are applicable to the situation of
the colonists in the new territory; which laws thus become the
laws of the colony, until they are altered by common consent
or by legislative enactment. (*Blankard* v. *Galdy,* 2 *Salk.* 411.
1 *Howard's Col. Law Introd.* 10. 5 *Wendell's Rep.* 445.
*Boehm* v. *Engle,* 1 *Dallas' Rep.* 15.) But there might be a
technical difficulty in pleading a statute of the mother coun-
try as the statute law of the colony. The common law of the
mother country as modified by positive enactments, together
with the statute laws which are in force at the time of the
emigration of the colonists, become in fact the common law,
rather than the common and statute law of the colony. The
statute law of the mother country, therefore, when introduced
into the colony of New-York, by common consent, because it
was applicable to the colonists in their new situation, and not
by legislative enactment, became a part of the common law of
this province. (*See Commonwealth* v. *Leach,* 1 *Mass. Rep.* 60.
*The same* v. *Knowlton,* 2 *Mass. Rep.* 534.) It was sufficient,
therefore, for the defendants to plead the facts which were
necessary to bring their case within the common law of this
state, without any reference either to the statute *32 Henry* 8, or

that of 21 *James* 1. The principle adopted by the first of these statutes was, that an adverse possession of sixty years was sufficient to bar any title or claim to real estate. That if the plaintiff, or claimant, could not prove that either he or his ancestors, or those from whom he claimed to have derived his title, were in the actual possession or seisin of the premises, or of the rents, &c. growing out of the same, within the period thus limited he should be forever barred. And the latter act limited the right of entry of the claimant to twenty years after his title accrued; with a reservation in favor of infants, and other persons who were under disabilities at the time their right of entry accrued. If the allegations in this plea are true, the corporation in 1705 received a grant from Queen Anne, who was then in the actual possession of the whole premises, and immediately entered, claiming title to the whole premises under that grant, adverse to the whole world; and has continued in such adverse possession ever since, under a claim of right. At the expiration of sixty years from that time, the right of the complainant's ancestor, if he previously had any, was completely barred. The complainant's counsel, however, have supposed it important to establish the fact that the corporation entered claiming under the deed of transport, as well as under the grant from Queen Anne. But as it is not alleged in the bill that the title which was vested in Colonel Lovelace and his heirs by that deed of transport was ever conveyed, either to the corporation or to the crown, I cannot see how a mere claim of a right to enter under that deed could make the corporation a tenant in common with Cornelius Bogardus; who, from the statement in the bill, could only have been a tenant in common with Colonel Lovelace, or his heirs, or assigns. Again; if it had been alleged in the complainant's bill that the interest in the premises which was once vested in Colonel Lovelace, had been conveyed to the crown, previous to the grant of Queen Anne, so that it vested in the corporation under that grant, there would have been the same difficulty as to the adverse possession. The deed of transport does not purport to convey an undivided interest in the property to the grantee, as tenant in common with any other person. On the contrary, it purports, upon its face, not only to convey the whole property, but to be

executed by the attorney of two of the heirs, under whom the complainant now claims two eights of one sixth of the premises. The claim to that portion of the premises, I presume, is made upon the ground that the person executing the deed of transport, was not in fact their attorney for that purpose. But for aught that appears in these pleadings, or in the deed of transport, Colonel Lovelace, at the time he took that conveyance, actually supposed the whole title to the premises was vested in the parties who were the grantors to him ; and that William Bogardus was authorized to convey the interest of his brothers, Jonas Bogardus and Jans Roeloffson. If, therefore, Lovelace or his assigns entered under that deed of transport, claiming title to the whole, although they might in fact be only entitled to an undivided portion, as tenants in common, it would be a good colour of title to support an adverse possession. And it would be such an ouster of their co-tenants in common as to bar their right, at the expiration of the period of limitation as settled by the laws in force at the time such adverse possession commenced. In the case of *Jackson* v. *Smith*, (13 *John. Rep.* 406,) where the grantor gave a conveyance of a lot of land, describing himself as heir at law of the patentee, and his grantee entered into possession claiming the whole lot under that conveyance, although it was afterwards discovered that the grantor only owned one ninth part of the premises, as tenant in common with others, it was held, this was a good adverse possession to bar the right of the other tenants in common of the grantor. In the case under consideration, the grantors in the deed of transport describe the premises as *their farm or bowery ;* which is certainly tantamount to a description of the grantor as heir at law of the former owner. So in the case of *Culler* v. *Motzer*, (13 *Serg. & Rawle's Rep.* 356,) the supreme court of Pennsylvania decided that where one tenant in common gives a deed of the whole premises, and the grantee takes possession under that deed, claiming title to the whole, it is a good adverse possession to bar the right of the other tenants in common. And by the decision of the court for the correction of errors, in the case of *Clapp* v. *Bromagham*, (9 *Cowen's Rep.* 530,) the law is now definitively settled, in this state, that the grantee of one tenant in common, of the

whole premises, entering under such grant and claiming title to the whole, may set up the statute of limitations as a bar to the rights of his co-tenants in common.    It is unnecessary, therefore, to inquire whether the allegation of the defendants that the corporation entered under the grant of Queen Anne, *and not otherwise,* claiming title to the whole premises, is equiv‑ alent to an absolute denial that the corporation entered claim‑ ing title under the deed of transport to Colonel Lovelace.   Be‑ cause, if the defendants had admitted that the corporation en‑ tered under both, claiming title to the whole premises, the re‑ sult would be the same as a bar to the claim of the complain‑ ant.    And if the crown actually derived its title to the premi‑ ses under the deed of transport, either by escheat or otherwise, and the agents of the government were in the actual posses‑ sion of the premises, claiming title to the whole under that conveyance, previous to October, 1700, although the defence would not be covered by the present plea, yet upon an answer insisting upon that fact, it would appear that the remedy of the complainant in this case was still more effectually barred by the act of the 30th of October, 1710.    (1 *Van Schaack's ed. of Laws,* 82.)    By that act it was declared that every person, or body politic or corporate, who by themselves, their tenants, or servants, or where his, or their ancestors, predecessors, or others under whom they claimed, had been seized to their own use, or had taken the rents, issues and profits of any mes‑ suages, lands, &c. in their own proper right, for the space of ten years before that time, and who should continue in pos‑ session, without any claim by actual entry and continued pos‑ session, or by suit prosecuted to effect, until the first of Sep‑ tember, 1713, should forever thereafter be adjudged, deemed and taken to be the true, rightful and lawful owner of such messuages, lands, &c. ; and might hold and enjoy the same, any claim, right, title, demand or pretence to the contrary notwithstanding.

I have not been able to discover that the letter of 1785, from the committee of the corporation to the agents of certain persons claiming another part of the church property, called the Domi‑ ne's Hook, can have any possible bearing upon the rights of

the parties as to the present controversy. There is nothing upon the face of that communication from which it can be inferred that the committee intended to admit that the corporation claimed even the lands called the Domine's Hook, under the deed of transport. As the corporation had been in the exclusive and undisturbed possession of that property for eighty years under Queen Anne's grant, it had the right to retain that possession against every person who could not show a better title to the premises. It was, therefore, sufficient for the committee of the corporation to satisfy the agents of the claimants that their ancestors had conveyed their whole interest to Colonel Lovelace, without showing that the corporation had subsequently obtained the same title under its grant from the crown. They probably also fell into the error of supposing that the Domine's Hook and the Domine's Bowery were but different names for the same premises ; and they therefore communicated the fact of the existence of this deed of transport as conclusive evidence that the claimants' ancestors had divested themselves of all right to the lands then in controversy. As the whole property granted by Queen Anne's patent had previously passed by the names of the Duke's farm, the King's farm, and the Queen's farm, the committee may also have had reason to presume that a conveyance had been made from Colonel Lovelace to the Duke of York, before he came to the throne, and that the whole had subsequently passed to his successors as a part of the crown lands. But as the deed of transport described the premises, thereby conveyed, as the farm or bowery of the grantors, the committee had equally strong reasons for presuming that there had been a conveyance to the grantors from their co-tenants, if they were aware of the fact that there were other children of Annetje Jans, who had not joined in the deed of transport. There is, therefore, no reasonable foundation for the supposition that the committee intended to admit, or that they even believed the corporation ever was, in fact, a tenant in common with the complainant or his ancestors, or with any other person.

Upon a full examination of the several questions which were so fully and ably argued by the counsel for both parties

In this case, I have arrived at the conclusion, that the plea of the defendants is good in point of form ; and that the defence set up is sufficient, in law, to bar this suit of the complainant against the corporation. Indeed, it would be a matter of deep regret if the law was otherwise ; as the establishment of a different doctrine by the courts would unsettle and disturb the titles to much of the real property in those parts of the state where the recording acts have but recently come into operation. If a clear, uninterrupted and exclusive possession of land, for one hundred and twenty-five years, under a grant or conveyance purporting upon its face to be a valid conveyance of the whole property, is not sufficient to protect the occupant of the premises, against the claims of those whose ancestors may have once been owners of an undivided interest in the same, the titles to lands in those parts of the state are certainly very unsafe. For it would, in most cases, be found to be impracticable, after such a lapse of time, to trace out and establish a regular chain of title from every person who had once held an undivided interest in the premises. The limitation law, therefore, in such a case, is not only a proper but even a meritorious defence, against dormant claims.

The plea must be allowed ; and the complainant's bill must be dismissed with costs, unless he shall within twenty days pay the costs of the argument of the plea, and file a replication to the same.