### SIPPERLY vs. STEWART and others.

When, on the trial of an action, a fact is assumed by the court and counsel to exist, and the case is disposed of upon such assumption, the non-existence of the fact in the case presented to the court, on a motion for a new trial, cannot be urged in opposition to the application for a new trial.

Thus, where the testimony given on the trial established the fact, that a receipt given by the plaintiff was given for a claim different from that sued for, and the case was tried on that hypothesis, and the defendants did not claim nor ask the referee to find otherwise ; *Held* that, on a motion for a new trial, the defendants could not urge the objection that the receipt was a bar to the claim in suit.

Evidence of a general *usage* or *custom*, in a particular locality or business, is not sufficient to charge a party, where there is no proof that he *knew*, or had even *heard* of, such usage or custom.

A custom, in order to become a part of a contract, must be so far established, and so far known to the parties, that it must be supposed that their contract was made in reference to it. For this purpose the custom must be established, and not casual—uniform and not varying—general and not personal, and known to the parties.

The rule, as modified by recent decisions, allows interest upon an unliquidated demand, the amount of which could be ascertained by computation, together with a reference to well established market values, because such values are so nearly certain, that it would be possible for the debtor to obtain some proximate knowledge of how much he is to pay.

Where no exception is taken, specially, to the allowance of interest in the report of a referee, the party cannot avail himself of the objection on a motion for a new trial.

APPEAL from a judgment entered upon the report of a referee.

The action was brought to recover for the use of the plaintiff's canal boat, (Miles Case.) The case was tried before a referee. It appeared on the trial that, in the month of November, 1861, the plaintiff contracted with the defendants to carry ten thousand bushels of oats from Chittenango to New York upon his canal boat. The plaintiff arrived in New York, with boat and cargo, on or about the 3d day of December, 1861. He called upon one Daniels, the agent of the defendants, who directed the plaintiff to leave the oats on board the boat. The oats, accordingly, remained on the boat until the ensuing April. The evidence was conflicting

as to the actual value of taking charge of the boat ; some of
the witnesses swearing that it was worth only $15 or $20 a
season.    There was also some evidence to prove that it was
the custom for the consignor to take charge of the boat, for
its use ; but there was a conflict upon this point also.    The
boat was unloaded on the 1st of April, 1862, and a few days
thereafter the plaintiff appeared, received the boat, and the
defendants' agent paid him the sum of $15.22 for the balance
of freight as sworn to by the plaintiff, and the plaintiff gave
him a receipt, which was as follows :

" Received of J. C. Daniels $15.22, in full of freight, and
in full for boat Miles Chase.

·(Signed)      WM. SIPPERLY.

New York, April 4, 1862."

The defendants moved for a nonsuit, at the close of the
plaintiff's evidence, upon several grounds, not necessary to
be stated.

The following are the facts found by the referee, as the
basis of his decision :

1. That the defendants hired of the plaintiff the use of the
canal boat " Miles Case," then laden with oats, belonging to
the defendants, for the purpose of keeping on board the oats
so laden on the said boat until they should be sold or un-
laden, and that the defendants promised to pay the plaintiff
for the use and hire of the said boat so much as the same was
reasonably worth.

2. That the said boat was retained and used in the man-
ner aforesaid by the defendants from the 3d day of December
inclusive, in the year 1861, until the 1st day of April, 1862.

3. That the use and hire of said boat, over and above all
charges, except the hire of a person to watch the same, was
worth the sum of $1.12½ per day.

4. That a proper watch upon and over the said boat in the
harbor of New York, where she was, could be procured at

the price of $20 for the whole period during which she was retained and kept there laden by the defendants.

5. That the defendants, at the plaintiff's request, paid to a boat keeper, left in charge of said boat by the plaintiff, the sum of $4.

6. That the defendants, by their agents, actually employed a man, for watching said boat, $110, but that said sum was more than the service was reasonably worth, its reasonable worth not exceeding the sum of $20, as above mentioned. To each and every part of the above findings the defendants duly excepted.

7. That when the plaintiff arrived at New York with said cargo of oats, he reported to one J. C. Daniels, who was an agent of the defendants, and authorized to act for them in relation to said matter, who took charge of said oats, and requested that they be retained on board of said boat until the same should be sold, to which the plaintiff assented. It was the agreement between the plaintiff and Daniels that the plaintiff should leave a hand on the boat to take care of it.

8. That the plaintiff left on board of said boat one Dayharsh, who staid on board and took care of said boat about four days, and then left the same, and went to his home several hundred miles away.

9. That soon after Dayharsh left said boat the plaintiff was informed thereof, and immediately wrote to said Daniels to put somebody on board of said boat, or let a Mr. Reals have charge of it.

10. That the plaintiff had only made an arrangement with said Reals to take charge of said boat after the same was unladen, and that Reals so informed Daniels. That the said Daniels did, very soon after the boat was left by Dayharsh, and before he could have received the plaintiff's said letter, and as the agent of the defendants and for the defendants, employ and put on board of said boat to take charge thereof, one Broclaw, who took said boat in charge, and took care of the same one hundred and ten days, and until she was un-

laden, and was paid therefor $110 by said Daniels. To the words, " and before he could have received the plaintiff's said letter, and as the agent of the defendants and for the defendants," the defendants excepted. .

11. That after said boat was unladen and delivered to the plaintiff, said Daniels paid him the balance of freight due him, and took his receipt therefor, before any claim was made for use of the boat.

12. That while said boat was in charge of said Daniels, and being cared for by said Broclaw, Daniels paid for dockage $45, making in all $200, including said $110 paid Broclaw, and that it was the duty of the plaintiff to unload said grain, as part of the transportation.

Upon the foregoing facts, the referee found, as conclusions of law, that the plaintiff was entitled to recover for the hire and use of the boat at the rate of $1.12$\frac{1}{2}$ a day, and the defendants to be credited $24 against that amount, leaving $109.87, with interest from April, 1862, to the date of the report, being $117.77, besides costs, for which amount judgment was entered. The defendants also excepted generally. Judgment being entered, the defendants appealed.

*R. W. Peckham, Jr.* for the appellants.

*N. C. Moak,* for the respondent.

*By the Court,* MILLER, J. According to the agreement, as found by the referee, the plaintiff was to leave a hand on the boat to take care of it. As the person employed had left, and no one remained, and no one was designated in season by the plaintiff, I think the defendants' agent was authorized, temporarily, at least, to employ a proper person for that purpose. Whether he should not have discharged the person thus employed, after the plaintiff's letter was received requesting him to let Reals take charge of the boat, or after

Reals had called and offered to do so, is perhaps unnecessary to consider, for as Daniels had authority to employ a person, under the circumstances existing, the main question in reference to this branch of the case is, as to the rate of compensation which should be allowed the defendants for thus providing a person to perform the service. The referee has found that the sum paid by the defendants was more than it was reasonably worth, its reasonable worth not exceeding the sum of $20. Some of the witnesses testify that it was worth not to exceed $15 or $20, and there is certainly considerable evidence to support the referee's finding. Although the defendants were justified in employing a man for that purpose, they were not authorized to pay an exorbitant price, and if they did so, it was at their peril. While the plaintiff would be liable for all ordinary expenses incurred in thus taking care of the boat and cargo, and for what it was really and fairly worth, he should not be made liable beyond that. What the price should be was a question of fact, in regard to which the testimony was somewhat conflicting, and the decision of the referee is not so entirely against the weight of the testimony as to justify this court in setting the report aside on that account.

It is objected that, there being an entire contract that the plaintiff should hold the oats and keep a man to stay on board and take charge of them, his failure to keep a man on board creates a breach of contract, which prevents his right to compensation. This objection was not taken on the trial, either on the motion for a nonsuit or in any other stage of the case. The parties appeared to act upon the theory that if this was the contract, a technical performance in this particular was waived by the defendants. As it was an objection which might perhaps have been obviated, if made in due season, and as the parties assumed that no such difficulty existed in the case, I am inclined to think that it is not now available. But even if the objection is now properly presented for consideration, I entertain serious doubt whether

Sipperly *v.* Stewart.

the mere fact of the man employed leaving the boat when the plaintiff had employed another person, who was ready to take the place of the one who had left, when called upon, would prevent a recovery, especially as the defendants' agent and the plaintiff had a correspondence in reference to the man leaving, and the plaintiff directed him to let Reals take possession, or to put some one else in charge, and what was done seemed to have been carried out in this respect by the assent of the parties.

I think the objection urged, that the receipt given by the plaintiff was a bar to this claim, is not well founded. The testimony accompanying the receipt, and which was introduced by the defendants, establishes that the receipt was given for the balance of the freight. The case was tried upon this hypothesis, and the defendants did not claim, nor ask the referee to find, otherwise. It was assumed on the trial, that such was the fact. And when the case is disposed of upon such an assumption, the non-existence of the fact in the case presented to the court on a motion for a new trial, cannot be urged in opposition to the application for a new trial. · (*The People* v. *Cook*, 8 *N. Y. Rep.* 78. *Smith* v. *Hill*, 22 *Barb.* 656.) If the objection had been taken on the trial, it might perhaps have been obviated. It might have been proved that the receipt was obtained by fraud, or there might have been some proper explanation of it. As it was, with the findings of the referee in regard to it, and no requests to find, I think the defendant is concluded.

The evidence of the value of the use of the boat was properly received. The witnesses, who testified upon this subject, had knowledge and experience as to the subject matter in regard to which they were examined, and gave evidence as to facts within their knowledge, and I think were competent witnesses for that purpose.

The request of the defendant's counsel, to find that it was worth one dollar a day to take care of a single boat, in the

condition in which the plaintiff's boat was left, and that boats could only be cared for at $20 each, when one person had a large number to care for at the same place, I think was not material. It could not affect the question what the actual value of the services performed was, and was therefore properly refused by the referee.

The referee committed no error, I think, in refusing to find that it was the general custom in and about the port of New York, when the owner of freight takes charge of the boat and pays all the expenses during the winter, to deliver the boat to the owner in the spring free of charge, that no charge is made for the use of the boat ; and that boats could have been procured on those terms, in which to store the oats. There was some proof of such a usage, but it was mainly confined to the knowledge and experience of two witnesses who had been in the practice of leaving their boats without charge for the use of the same. One of these testified that the boat is unloaded and delivered in the spring, without charge for its use, the one being set-off as an equivalent for the other. The proof was not enough to establish a general custom beyond any question. At least there was no evidence that the plaintiff *knew*, or even had *heard of this usage.* This would, I think, render the usage inoperative, so far as the plaintiff was concerned. The rule is thus laid down : "A custom, in order to become a part of a contract, must be so far established and so far known to the parties, that it must be supposed that their contract was made in reference to it. For this purpose the custom must be established, and not casual — uniform and not varying — general and not personal, and *known to the parties.*" (2 *Parsons on Cont.* 53. *Dawson* v. *Kittle,* 4 *Hill,* 107. *Ripley* v. *Ætna Ins. Co.,* 30 *N. Y. Rep.* 136.) There was not a particle of evidence to prove that the plaintiff *knew* of any such custom, and the proof did not, I think, come up to the standard of the rule here laid down. Nor was there evidence sufficient to war-

rant a finding that Daniels could have hired boats on the terms indicated.

The request to find that at the time Daniels delivered the boat to the plaintiff he informed him of the amount of charges that he had paid on said boat, and for caring for the same after it was left, and the plaintiff made no objection, was not, I think, important as a distinct fact. The evidence on this subject only tended to establish that the defendant was not liable; and even if such a finding had been made, it probably would not have changed the result. There was evidence to show that the plaintiff, at the time referred to, made a claim for the use of the boat, and it may be questionable whether the finding requested may not have been in conflict with such evidence. It was properly refused.

An exception is taken to the allowance of interest, by the referee. The rule, as modified by recent decisions, allows interest upon an unliquidated demand, the amount of which could be ascertained by computation, together with a reference to well established market values, because such values are so nearly certain that it would be possible for the debtor to obtain some proximate knowledge of how much he was to pay. (*McMahon* v. *The N. Y. and Erie R. R. Co.*, 20 *N. Y. Rep.* 469. *Van Rensselaer* v. *Jewett*, 2 *Comst.* 135.) Within this rule, I think that interest was chargeable and properly allowed.

Independent of these considerations, it may be added that the defendants here were not in a position to avail themselves of this objection, for the reason that no exception was taken, specially, to the allowance of interest in the report of the referee.

The case shows an error of the referee in not allowing the defendants the sum of $45 proved to have been paid by the defendants for unloading the cargo of oats. One of the witnesses testifies that it was custom for the captain to unload the freight, when he arrives, as a part of the transportation, and the referee has found that it was the duty of the

---

plaintiff to unload the grain, as a part of the transportation. The plaintiff's evidence does not contradict this view; and as the plaintiff did not unload the boat, and did not pay for unloading it, the amount actually paid out for that purpose should have been deducted from the plaintiff's demand.

The judgment being erroneous in this respect, a new trial must be granted, with costs to abide the event, unless the plaintiff shall consent to deduct that amount, with interest, from the recovery had; in which case, a new trial is denied. No costs of the appeal should be allowed to either party, and the judgment affirmed.

[ALBANY GENERAL TERM, March 4, 1867. *Peckham, Miller* and *Hogeboom,* Justices.]