## WINTHROP W. CHENERY *vs.* JOHN Z. GOODRICH.

On a question raised at a trial, whether a practice was tolerated to a certain extent at a custom-house, the party denying the practice is entitled to a ruling that there is no sufficient evidence thereof, if no witness can recall a specific instance of it.

TORT for an alleged libel charging the plaintiff with fraud in procuring the alteration of a custom-house return, under pretence of correcting a mistake, and in order to evade the payment of duties. The declaration is more fully stated in 98 Mass. 224. The answer justified the publication. At the trial in this court, before *Ames*, J., the following facts appeared :

The U. S. St. of 1861, *c.* 45, § 5, provided that the duties on all goods deposited in a public store or warehouse must be paid " in three months after the same are deposited," or be subject to an additional duty of twenty-five per cent. The plaintiff, who

was a merchant at Boston, imported a cargo of rum, sugar and molasses on July 24, 1862. The rum was deposited in the public store on July 25, but, by an arrangement between the plaintiff and the storekeeper, the sugar and molasses were not removed to the store, and were sold on the wharf on July 26. The whole cargo was discharged from the vessel on July 25, and upon the order to the storekeeper to receive the goods into warehouse he made this return: "Boston, July 25, 1862. The merchandise permitted within was received into store on the 25th day of July 1862." On July 26 the duties on the sugar and molasses were paid; a permit to withdraw them from the store was obtained by the plaintiff; and on July 28 the purchaser presented the permit to the storekeeper, and the goods were removed from the wharf. The U. S. St. of 1862, c. 163, § 21, which took effect on August 1, 1862, provided that all goods in public store on that day, which should remain in store more than three months from the date of the importation, should pay double duties. On October 28, 1862, the plaintiff sent his clerk, one Fuller, to take the rum out of store; and the storekeeper told him that it was past the three months, and double duties must be paid; whereupon the plaintiff went to see the storekeeper, and induced him to alter his return by inserting the words "and 28th" after "25th," and withdrew the goods on payment of single duties. The plaintiff contended that he acted in good faith.

Fuller testified "that there had been a practice, permitted or tolerated at the custom-house, to reckon the time for removal from the date of the deposit, actual or constructive, of the last article or package of the cargo; that the storekeeper had no right to receipt for goods unless he had the goods or received some voucher for them, and should not give a receipt until he had received the goods or a permit for them; that he supposed the custom was to date the three months from the day the last package went into the warehouse, either actually or constructively."

Timothy B. Dix, storage clerk at the custom-house, testified that he told the storekeeper that the return could properly be amended as the plaintiff wished. On cross-examination, he testified "that until stored or duties paid a cargo was in the custody

of the inspector ; and that, when entered as given to the store-keeper, he ought not to give a receipt for it till he had it in actual possession or had a delivery permit for it ; that goods could only be withdrawn upon a permit addressed to the storekeeper; and that suffering them to remain on the wharf for the accommodation of the importer was often allowed."

Taylor M. Rundlet testified " that for some years, while he was warehouse accountant, ending in 1861, it was the general practice at the custom-house to reckon the period allowed for storage, during which the duties were not payable, from the date of the actual or constructive deposit of the last package, without reference to the date of importation."

" In order to prove that a practice, to some extent, existed or was tolerated at the custom-house in October 1862, to allow an importer to withdraw his goods within three months from the date of the actual or constructive deposit of the last package, although this might be more than three months from the date of the original importation, without the payment of additional duties, (the existence and materiality of such a practice being denied by the defendant,) the plaintiff, in addition to the testimony of Fuller, relied on that of Dix and Rundlet, who testified as to the practice under previous acts of congress only, and both of whom on cross-examination admitted that they could not recall a case in which the delivery of the withdrawal permit to the storekeeper had been taken as the date of the last deposit, and the latter of whom said that he could not recall or state any particular case in which, under the former law allowing storage for the term of three months, an importer had withdrawn his goods for exportation after the expiration of that time. And Hamilton A. Hill, called as a witness by the plaintiff, testified that he made an investigation in 1863 at the defendant's direction, and found nineteen cases and no more, under the law of 1862, in which goods were withdrawn after the expiration of three months from the date of importation, without the payment of additional duties ; but that goods were generally withdrawn within the three months ; that these were marked and exceptional cases ; that he never knew any case but this, in which the day of presentation

of the withdrawal permit had been treated as the last day of deposit; that he knew nothing officially on the subject, and never knew an instance of a refusal to allow that time to be fixed; that all these nineteen cases occurred under the administration of the storekeeper who changed the return; and that he knew no case, before that investigation, in which the penalty for overrunning the three months had been exacted at the custom-house.

" Upon the foregoing testimony, the defendant asked the judge to rule, that there was no competent evidence of any practice at the custom-house in October 1862, such as was alleged by the plaintiff; that there was no competent or sufficient evidence of any practice or instance in which the date of the presentation of the withdrawal permit at the store for delivery of goods entered, but, at the request of the importer, allowed to remain outside, was considered or allowed to be taken as the day from which the three months were to be reckoned on that part of the cargo actually warehoused; and that there was no evidence that the plaintiff knew or acted with reference to any such practice.

" The judge did not so rule, but left it to the jury to say on all the evidence, whether the plaintiff, believing or supposing that there was such a practice, claimed the benefit of it at the custom-house; and whether that claim, if made, was so very wide of the truth that no man could honestly say he understood it to be a fair claim. If not manifestly absurd and preposterous, he might lawfully urge it upon the officers. If he made the representation honestly, told no falsehood about it, stated what he thought to be true, and claimed only that on those facts he was entitled, as a matter of right and law, to withdraw his goods on payment of single duties only, and the officers acquiesced in the claim, it would not be a fraud on his part; but otherwise, if it were a mere fabrication and pretence on his part, or if he induced the officers to yield to his claim by corruption, bribery, threats or improper influence."

The jury returned a verdict for the plaintiff for $10,000 damages, and the defendant alleged exceptions.

*H. W. Paine & E. Merwin*, for the defendant.

*P. W. Chandler & G. O Shattuck*, for the plaintiff.

AMES, J. The plaintiff insisted, and made an attempt to prove, that a practice to some extent existed or was tolerated at the Boston custom-house in October 1862, to allow an importer to withdraw his goods without the payment of increased duties, at any time within three months from the date of the actual or constructive deposit of the last package, even though more than three months from the date of the original importation had elapsed. He claimed also that in the case of goods which did not literally go into the government warehouse at all, but remained outside to be sold upon the wharf, and to be withdrawn, if sold, on payment of duties, (that is to say, in cases of a mere constructive deposit in the warehouse,) the time of the presentation of the withdrawal permit to the storekeeper, as a voucher to justify him in allowing the removal of goods so constructively entered, was in practice treated as the date of the constructive deposit of such goods, whereby to fix the date of deposit of the whole invoice. The testimony offered on this point related to the practice of an earlier date, under the operation of previous statutes, and was also of a very vague and general character. On cross-examination, the witnesses upon this point admitted that they could not recall a case in which the date of the delivery of the withdrawal permit had been treated as the date of the last deposit. The evidence was undoubtedly competent to prove that the actual deposit of the last article was, under the former practice of the custom-house, considered as the starting point for the computation of the time ; but a general statement, to the effect that the final withdrawal of goods without sending them to store at all was in practice considered as a constructive deposit, is a different matter. The withdrawal permit may remain in the hands of the importer, or of the person purchasing from him, for an uncertain length of time, during which the date of deposit, on the plaintiff's construction, would remain uncertain and indefinite. It appears to us, therefore, that in view of the extent to which the plaintiff sought to carry the definition of constructive deposit, the defendant was entitled to a ruling that there was no competent or sufficient evidence of a practice to treat the date of the presentation of the withdrawal permit at the store, for delivery

of goods not warehoused in fact, as the day from which the time was to be reckoned as to that part of the cargo not actually warehoused. It is true that it was not an attempt to prove an established or uniform usage ; but even an occasional practice " tolerated to a certain extent," in a certain department of business for any given year, cannot be said to be made out, without distinct proof of some specific instances during the period in question.

The remaining exceptions we do not think it necessary to consider, as they are not necessarily material upon the new trial of the case.                                    *Exceptions sustained.*