## BASSETT, appellant, v. LEDERER.

*Agency — sale of goods by broker — when principal not bound by act of agent —
Notice — when receipt is — Evidence — character — payment.*

A broker asked plaintiff to sell certain goods to defendant on credit. Plaintiff consented to do so and delivered to the broker an invoice in which it was stated that the goods were sold by plaintiff to defendant, and a receipt to be taken by plaintiff's carman from defendant, in which it was stated that the goods were received from plaintiff. The goods were delivered by plaintiff's carman at defendant's store, and the receipt signed by defendant's clerk in charge of the store. The broker was present when the goods were delivered and professed to deliver them himself, and afterward collected pay for them from defendant. *Held*, (1) that the statement in the receipt that the goods were from plaintiff was notice of that fact to defendant; (2) that a neglect of defendant's clerk to read the receipt did not excuse defendant from the consequences of such notice; and (3) that plaintiff's delivery of the invoice and receipt to the broker divested plaintiff of none of his rights as to the property or its price.

Evidence on behalf of defendant that the character of the broker for honesty and fair dealing was good; *held*, inadmissible in this case.

The complaint alleged that defendant had not paid plaintiff for the goods sold and was indebted in the amount claimed. The answer was a general denial. *Held*, that evidence that defendant had paid the broker was inadmissible.

APPEAL from a judgment entered upon a verdict, and also from an order denying a motion for a new trial, made on the minutes.

The action was brought by Francis Bassett, Jr., against Samuel M. Lederer, to recover the price of certain goods claimed to be sold by plaintiff to defendant. The sale was made through one Westbrook, a broker, and defendant claimed to have purchased such goods of Westbrook as principal, and to have paid Westbrook for them, acting in good faith and without knowledge of plaintiff's claim. Such other facts as are material appear in the opinion.

*W. I. Butler*, for appellant.

*Boardman & Boardman*, for respondent.

DANIELS, J. As the plaintiff has appealed from both the judgment and the order denying his motion for a new trial, all the questions presented by the case, as well as the exceptions taken, are

properly before the court. If, upon any ground, the plaintiff was improperly defeated in the action, a new trial must, therefore, be directed in his favor.

The action was brought to recover the price of goods sold and delivered by the plaintiff to the defendant. The sale was made through the intervention of an agent, acting as a broker. The uncontroverted evidence, given upon the trial, tended to show that the broker applied to the plaintiff for the purchase of the goods, representing that he had a customer who wanted them, and finally named the defendant as the person. That the plaintiff agreed to sell the goods to him, and he afterward sent them to his store by a carman in the plaintiff's employment, who delivered them there and took a receipt for them from the person there receiving them for the defendant. The person who signed the receipt was in the habit of doing almost every thing done in the store, and receiving and receipting for goods. Under this description of his duties, which was given by himself, no difficulty can exist in the way of the presumption that he was so far empowered to act for the defendant as to be authorized to bind him by signing receipts for goods delivered at the store in his behalf. This was apparently his authority, from the nature and character of his employment, and persons transacting business at the store had the right to presume that the fact, in that respect, corresponded with the existing indications of it.

This receipt contained the statement on its face that the goods received were from the plaintiff, and they were marked for the defendant. The person receiving the goods, and who signed the receipt for them, was the defendant's brother. In his testimony he stated that he did not notice that portion of the receipt which contained the statement that the goods were from the plaintiff. But even though he failed to do that, as the statement accompanied the goods, and was sent with them by the plaintiff for the purpose of showing the defendant or the person in his employment receiving them in his behalf, that they were from the plaintiff, it was notice of the existence of that fact, and the circumstance that the defendant's clerk neglected to so far notice the contents of the receipt as to discover the statement made on that subject cannot be permitted to prejudice the plaintiff's demand. He discharged his duty, so far as it concerned that act, by sending the notice with the goods, and causing it to be presented to the person receiving them for the de-

Bassett v. Lederer.

fendant at the time of their delivery. That was the natural as well as ordinary form which would be expected to be given to such an instrument attending a transaction like that which occurred when the goods were delivered. A receipt merely stating that the goods themselves were received, without any mention of the person sending them, would be of so incomplete and indefinite a nature as to be of but little use in the transaction of mercantile or even any other description of business. Such instruments might as well be omitted as preserved, so far as any real, permanent, practical benefit could be expected to be secured from them. The habits and course of business sanction the use of the form adopted, as evidence that the plaintiff delivered these goods to the defendant; and a moment's reflection would have satisfied the person actually receiving them for him, that information of that fact would probably be found in it. He was negligent in not examining the receipt and discovering the fact. The consequences of that negligence, so far as they may prove important in this case, as he was the defendant's servant, must be borne by him and not by the plaintiff. By the acts which were performed the notice was brought immediately under his observation, and he failed to discover it by simple inattention; and that, too, when the nature of the business and the purposes of the receipt led directly to the conclusion that the name of the person from whom the goods came would be found in it as a portion of its ordinary and appropriate contents. Other persons in the transaction of their own business may have often been equally careless; but, if the fact were so, it would form no protection for the defendant against the direct consequences of such an omission.

If a reasonable degree of attention had been given to the contents of the receipt by the person who received the goods and signed it, the fact would have been at once discovered that they came from the plaintiff, and that would have suggested the probability that he, and not the broker, was the vendor in the sale made of them. That would have been enough to stimulate such an inquiry into the truth of the business, as in the end would have operated as a full protection againt the broker's fraudulent devices. Having such means at hand for the discovery of the truth, and neglecting to make use of them, is attended with the same legal results as the knowledge which a proper investigation would have secured. And that would have deprived the defendant of all pretense that he was a *bona fide* purchaser of the goods from the broker as their vendor. The rule

laid down by the Chancellor is, that "whenever the purchaser has sufficient to put him on inquiry, he is in equity considered as having notice; and in such a case will not be deemed a *bona fide* purchaser." *Pendleton* v. *Fay*, 4 Paige, 202, 205. And that principle, as one of general application, was maintained in *Williamson* v. *Brown*, 15 N. Y. 354. And for that purpose, placing knowledge of the fact under the immediate observation of the defendant's clerk, as it was when the receipt was presented to him for his signature as a portion of the transaction in which he was acting for his principal, was in legal effect the same so far as the latter is concerned, as though he himself and not his agent had acted in the business. There is no difference between personal and constructive notice when the latter results from the transaction in which the agent is acting for his principal. *Bank of U. S.* v. *Davis*, 2 Hill, 452, 461. That this receipt might reasonably have been supposed to contain a statement of the name of the person selling the goods is shown by the evidence which the defendant himself gave as a witness in his own behalf. For he testified that receipts given on the delivery of goods generally state from whom they come.

After the terms of the sale had been agreed upon between the plaintiff and the broker — acting, as it was supposed by the former, for the defendant — he delivered an invoice to the broker, stating the sale by the plaintiff to the defendant, and the goods themselves, with the receipt to be taken to his own carman to be delivered to the defendant. Nothing whatever was delivered to the broker by the plaintiff, showing him to have any interest in or right of disposition over the goods. He did not put it in the broker's power to deceive the defendant and induce him to purchase the goods under the belief that they were the broker's property. On the contrary, he took every reasonable precaution to avoid the possibility of deception in that respect, for he withheld the possession from the broker, sent them to the purchaser by his own agent, with a receipt to be taken showing the source from which they came. He could have reasonably been expected to have done nothing more, unless it might be to have sent the invoice by the same hand that carried the receipt, and the omission to do that cannot change his rights, because it did not supply the broker with any indication of title to the property in himself. Under these circumstances the broker was invested with nothing by the plaintiff indicating him to be the owner of the goods; and consequently he had no evidences of title

on which the defendant could rely to the plaintiff's prejudice. He was in no condition to sell the property as his own and transfer the title to it as such. Such a sale could divest none of the plaintiff's rights in the property or its price. *Saltus* v. *Everett*, 20 Wend. 267; *Ballard* v. *Burgett*, 47 Barb. 646; S. C., 40 N. Y. 314; *Spraights* v. *Hawley*, 39 id. 441. These cases maintain the rule so often asserted in the books that the lawful owner cannot be deprived of his property by the act of a person wrongfully making sale of it — where he has done nothing that can properly lead the purchaser into the belief that the person he may deal with has the right to transfer its title.

The only authority which the plaintiff gave to the broker over the goods was the right to sell them as a broker; and, as it appears from the defendant's own statement as a witness, that he knew Westbrook as a broker and merchant generally, he should have inferred from the circumstance that he came to make the sale without having possession of the property he proposed to sell, that he was then acting as a broker and not as a merchant. That was the mode in which brokers ordinarily made sales, and it was sufficient to charge the defendant with knowledge that he was then apparently proposing a sale in that capacity. The fact that he represented himself to be the actual owner cannot protect the defendant as long as the plaintiff had conferred upon him no colorable authority to make such a representation, and the case in favor of the plaintiff can be in no way changed by the circumstance that the broker artfully contrived to be present when the carman unloaded the goods and then professed to have made the delivery of them himself. As long as the plaintiff did not empower him to deceive the defendant by his professions and artifices, he cannot be rendered responsible for their consequences. He simply authorized the broker to sell in that capacity, and as he was known to the defendant to be a broker and had in reality no possession of the property he offered for sale, the purchase must be held to have been made in that and no other way. So far the plaintiff was bound by his acts and no farther; and as the defendant secured a title to the goods through his interposition in that capacity, the transfer was attended with the ordinary results of purchases made in that way. Though professing to act for himself, he really acted for the plaintiff under such circumstances as rendered the sale which was made the sale of the plaintiff through Westbrook as his broker; and that, as long as

no rescission of the sale was ever attempted, created such a privity between the parties to the action as entitled the plaintiff to the price of the goods sold. *Taintor* v. *Prendergast*, 3 Hill, 72; *Dunn* v. *Wright*, 51 Barb. 244; *Higgins* v. *Moore*, 34 N. Y. 417.

During the progress of the trial evidence was given from which it was claimed by the defendant that a custom existed at the time when the sale was made which authorized him to make payment of the purchase price of the goods to the broker, and that, having made such payment, the plaintiff could not recover. Ordinarily the broker, whose only authority is to sell, has no such power, and to supply that defect the evidence of usage was given.

It is not necessary to decide whether a custom established by such a usage would be valid or not, because the proof given upon the trial falls very far short of maintaining its existence. To render a custom or usage of trade valid and binding it must be known, certain, uniform, reasonable, and not contrary to law. 2 Greenl. Ev. 251; 2 Pars. on Contr. (2d ed.) 53; *Sipperly* v. *Stewart*, 50 Barb. 62; *Barnard* v. *Kellogg*, 10 Wall. 383; *Chenery* v. *Goodrich*, 106 Mass. 566; *Southwestern Freight Co.* v. *Stanard*, 44 Mo. 71; *Walls* v. *Bailey*, 49 N. Y. 464. The evidence given failed to show that the usage relied upon was either known, certain or uniform. Indeed, it showed the precise converse to be the truth. The evidence of the defendant himself is about as significant as any in the exhibition of these defects, and as he was extensively engaged in the business and testifying in his own behalf, it may well be presumed that his statement upon this subject would be as favorable as the facts would warrant him in making it. He said that he knew "a great many transactions that have been made through brokers where they sent the bills in their own name, to the amount of hundreds of thousands of dollars; goods delivered by another party, bill sent by the broker, and the party receiving the goods not knowing any thing about where they came from, except from the bill, and did not care; at least I am one that did not." On his cross-examination he added he did not know whether the broker was authorized by the seller to receive the pay or not. McCune said that brokers sold and received pay in their own names at times, and that was the custom of the establishment he was treasurer and secretary of. On his cross-examination he stated that he only said it was done in some instances, and did not say it was a general custom. Scott said that he had bought goods that way, but did not know

whether the seller specially authorized the broker to receive payment or not. He knew that brokers did it, and it was common for them to sell in their own name. But he stated that he did not say it was the practice of brokers to collect the money. Enright testified that there was no general custom to that effect. That he never collected the payment only when he was specially authorized. Cushman at first stated that it was always customary for brokers to sell in their own names and receive payment of the price, but afterward added that he did not know what the custom was, but it was often done at the time of the sale in controversy. Hinchman said there was such a custom, but qualified this answer by saying that he knew he did it, and thought brokers did. When he did it, he said it was the arrangement between him and his employer. Douglass said about the same. He spoke only from his own observation, and acted in that way by the special authority of his employer. This is the substance of all the evidence given for the purpose of establishing the custom relied upon, and it is clear that it is too vague, uncertain and casual to be attended with such a result as was given to it on the trial.

The court also permitted the defendant to show that Westbrook's character was good for honesty and fair dealing. To the admission of this evidence the plaintiff excepted, and several witnesses stated it to be good. This ruling cannot be sustained; it is opposed to the rule, as settled in this State, defining the cases in which evidence of this description can be received. This is not a case in which such evidence can be taken. *Gough* v. *Herring*, 16 Wend. 646; 1 Phill. Ev. (3d ed.) 466, 467.

The complaint stated that the defendant had not paid the plaintiff the price of the goods sold, nor any part of it, and that the defendant was indebted to the plaintiff in the amount claimed. The answer consisted of a general denial. Under this issue the defendant was allowed to prove that he had paid Westbrook, the broker, for the goods, and the plaintiff excepted to the ruling, permitting that evidence to be given. The exception was well taken, as the rule upon this subject has been heretofore maintained. *Van Giesen* v. *Van Giesen*, 10 N. Y. 316 ; *McKyring* v. *Bull*, 16 id. 297.

The judgment and order should be reversed, and a new trial ordered, with costs to abide the event.

BRADY and WESTBROOK, JJ., concurred.

*Judgment reversed and new trial ordered.*