GALLUP v. LEDERER, appellant.

*Evidence — Agent, limitation of authority of — Custom — Damages — upon sale of goods.*

Plaintiffs sold, through a broker, certain goods to defendant. The goods were delivered by plaintiffs' carman at defendant's store, and defendant's clerk in charge of the store, who received them, signed a receipt presented by the carman, in which it was stated that the goods were received from plaintiffs. At the time of the sale the plaintiffs gave the invoice of the goods to the broker and did not send one with the goods. The broker, who pretended to defendant that the goods were his own and sold them as such to defendant, made out an invoice in his own name and collected their price. In an action for the price of the goods, *held,* (1) that defendant was not entitled to show that his clerk had no authority to sign the receipt in question, such clerk having apparent authority for that purpose; (2) that defendant could not show previous dealings between himself and the broker, having no connection with the transaction in controversy; (3) that the failure to deliver an invoice with the goods did not deprive plaintiff of his rights, even though it was customary for invoices to be sent with goods; (4) that a custom of signing receipts presented by carmen delivering goods, without inquiry as to the ownership of the goods, could not be shown as being unreasonable and tolerating carelessness, nor (5) could a custom of brokers to sell and receive pay for goods in their own name, such custom not being shown to be general. *Held,* also, that the existence of a custom must be proved as a fact and not as a judgment or conclusion of the witness.

The action was brought upon the sale made by the broker. *Held,* that plaintiff could recover only the purchase price and not the value of the goods at the time of a demand made for them upon defendant.

EXCEPTIONS ordered to be heard in the first instance at the General Term.

. The action was brought by Albert S. Gallup and others against Samuel M. Lederer to recover for the price of certain goods claimed to have been sold by the agent of plaintiffs to defendant. The facts are similar to those in the case of *Bassett* v. *Lederer, ante,* page

671, the purchase and sale being made by the same broker, West-brook, who bought the goods of plaintiffs' agent, one Churchill, and sold them to defendant, claiming to own them and afterward collecting the pay therefor from defendant. At the time of the sale an invoice of the goods in the name of plaintiffs was handed to the broker, but he suppressed this invoice and made out one in his own name which he delivered to defendant. At the time the goods were delivered, the carman who delivered them presented a receipt in which it was stated that the goods were received from plaintiffs, and this receipt was signed by an employee of defendant who received the goods at defendant's store.

*W. I. Butler*, for plaintiffs.

*Boardman & Boardman*, for defendants.

DANIELS, J. This action arose out of a similar transaction to that involved in the case already considered between Bassett and the present defendant. So far as the legal rights of the parties are concerned, no necessity exists for a reëxamination of them. They must be determined according to the disposition of the other case; but in this case evidence was excluded which the court in the other allowed to be given, and a verdict was directed for the plaintiffs for the value of the goods sold, instead of the price at which the defendant purchased them. The defendant testified that West-brook acted as the broker in purchasing the goods, and that any boy or salesman at the door would receipt for the number of packages received. It appeared also that the receipt given for the goods sent to the defendant's store by the plaintiffs' agent stated them to have been received from him. The defendant, after that, was asked whether he ever authorized any clerk to sign a receipt stating who the owner of the goods was. This was excluded on the plaintiffs' objection, and the defendant excepted. As the receipt stating from whom the goods came was in the form commonly used in business transactions, the admission of this evidence would have been of no service to the defendant, for the person receiving the goods appeared, by the defendant's own statement, to be authorized to sign the receipt of the carman who brought them, and no private restriction, not communicated to the other party to the transaction, was admissible for the purpose of qualifying the authority which

appeared to be ample for the purpose the business required.  1 Pars. on Cont. (2d ed.) 40–42; Story on Agency (4th ed.), §§ 73, 126–7, and notes.

The offer to prove the preceding dealings between the broker Westbrook and the defendant was very properly overruled.  Those dealings had no possible connection with the transaction in controversy, and the plaintiffs were in no way concerned in them.  They could not be considered as affecting their rights, and were entirely irrelevant to the case.  Even though they may have been just and fair in all respects, they could afford no protection to the defendant against the plaintiffs' demand when that proved to be well-founded by the facts and circumstances constituting the transaction out of which it arose.

The custom offered to be shown that merchants sent invoices with goods sold at the time of their delivery, stating the names of the vendor and vendee, the quantity, numbers, packages and price of the goods could have had no effect upon the rights and obligations of the parties, even if it had been received, for, as the plaintiffs did nothing which could be construed or received as an indication that the goods were owned by the broker, they could not be deprived of their property in them or their right to the price for which they were purchased by the defendant, although the invoice delivered to the broker was fraudulently suppressed by him and for that reason never exhibited to the defendant.  The sale was made by a person known to the defendant to be a merchandise broker and speculator, and as the goods were never placed in his possession by the plaintiffs, the defendant should have ascertained that circumstance and inferred from it that he acted simply as a broker in the transaction and not as a merchant selling his own property.  The fact that the broker deceived him and on account of such deception he failed to discover the true relation he sustained to the business, was no fault of the plaintiffs, since it was practiced without their authority or knowledge, and they did nothing to render the deceit successful.

The custom proposed to be proven, that merchants signed receipts, presented by carmen with goods, without any inquiry on the part of the receiving clerk or porter as to the ownership of the goods, or the place from which they were received, was entirely unreasonable, because it placed the consequences of one person's negligence and inattention upon another, in no way connected with him, having no control over his conduct and for whose acts he could be in

no proper sense responsible. A custom tolerating carelessness and inattention in the ordinary affairs of business, would be inconsistent with the legal as well as social duties which one person, in those affairs, owes to another. It would be not only unreasonable, but opposed to well-settled legal obligations, to maintain the validity of a custom like that the defendant proposed to prove upon this subject.

In the same line of defense, the defendant was asked whether, at the time of the sale, there was a custom of brokers to sell goods in their own name, and to receive pay therefor. This inquiry was excluded by the court and the defendant's counsel excepted. If a custom sanctioning such a course of conduct, on the part of brokers, would be valid, the inquiry was not broad enough to render the proof admissible, for it might very well have been, so restricted as to the time and persons, as to afford no ground for supposing the plaintiffs to have had any notice or knowledge of its existence. The defendant did not propose to prove a general custom upon that subject, but simply a custom of brokers, which might very well be unknown to all other persons. To render a custom valid and binding upon a party to a transaction included within it, the proof should show, or propose to show, it of such long continuance or general application as reasonably to warrant the conclusion that it was known to the party designed to be affected by it, or that he had actual knowledge or notice of its existence. 2 Cow. & Hill's Notes to Phillips' Ev. (3d ed.) 508, 509; *Southwestern Freight Co.* v. *Stanard,* 44 Mo. 71, 82; *Sipperly* v. *Stewart,* 50 Barb. 62; *Walls* v. *Bailey,* 49 N. Y. 464. This, as well as the other offers of proof of custom, were plainly defective in this respect, and for that reason properly excluded. The effect of such a custom, so far as it extended, would be to abrogate an existing well-established principle of law, designed for the protection of persons selling their property through the agency of brokers; and nothing less than actual or presumed assent to its application should be allowed to render it obligatory. *Rogers* v. *Mechanics' Ins. Co.,* 1 Story, 603; 2 Cow. & Hill's Notes (3d ed.), 508, 509; *Higgins* v. *Moore,* 34 N. Y. 417; *Barnard* v. *Kellogg,* 10 Wall. 383, and cases above cited.

To prove the existence of a custom, something more than the judgment or conclusion of the witness called to support it is required. A custom is the result of usage, and can only be properly shown by proof of the usage from which it may be claimed to be

Gallup v. Lederer.

derived. The inquiry in such cases is not after the opinions of traders and merchants in respect to the law upon a mercantile question, but for the evidence of a fact, to wit: the usage or practice in the course of mercantile business in the particular case. *Allen* v. *Merchants' Bank,* 22 Wend. 215, 223 ; *Rogers* v. *Mechanics' Ins. Co.,* 1 Story, 603, 607, 608 ; *Lewis* v. *Marshall,* 7 Man. & Grang. 729. The inquiry made of the witness was properly excluded, for the additional reason that it required him to give his conclusion instead of detailing the facts which might sustain that conclusion.

The exceptions taken to the other evidence excluded are so clearly untenable as to require no consideration. It was evidently improper to allow the defendant to construe the receipt, or determine its effect, by answering whether it afforded any indication of the ownership of the goods; neither could it have been proper to show that purchasers allowed their goods to remain in warehouses undelivered, until the title to them had passed through various other persons. Such a practice had no relevancy whatever to the transaction upon trial.

The court charged the jury that the plaintiff was entitled to recover the market value of the goods at the time when they were demanded from the defendant. To this direction the defendant excepted. That value was shown to be from thirty-two to thirty-five cents per yard, while they were purchased and received by the defendant for the price of thirty cents per yard. The broker was authorized to sell, and the action was to recover upon the sale made. In theory it affirmed the sale and bound the plaintiff by its terms. This direction was, therefore, improper so far as it permitted the plaintiff to recover a greater price than that for which the goods were purchased by the defendant.

For that reason the verdict must be set aside and a new trial ordered, with costs to abide the event, unless the plaintiff shall, within twenty days after notice of this decision, stipulate to reduce the verdict to the amount due the plaintiff at the price of thirty cents per yard, as of the date when it was rendered. In which event the motion will be denied and the plaintiff have judgment upon the verdict, without costs of the present motion.

WESTBROOK and BRADY, JJ., concurred.

*Ordered accordingly.*