In the Matter of the Application of GERSETA CORPORATION, Respondent, for a Peremptory Mandamus Order against THE SILK ASSOCIATION OF AMERICA, Appellant.

First Department, April 29, 1927.

Corporations — membership corporation — petitioner was expelled on ground that it refused to arbitrate questions arising under contract — contract in question provided that " sales are governed by Raw Silk Rules adopted by the Silk Association of America "— said provision does not require compulsory arbitration — evidence does not show existence of custom requiring compulsory arbitration under clause in question — not necessary for petitioner to demand reinstatement before proceeding in court — petitioner did not waive its rights by endeavoring to prevent expulsion — petitioner was improperly expelled and mandamus is granted reinstating petitioner to membership.

The petitioner was expelled from membership in the appellant on the ground that it had violated its contract in that it refused to arbitrate questions arising under a contract of sale. The contract of sale provided that " sales are governed by Raw Silk Rules adopted by the Silk Association of America." The petitioner was not a member of the raw silk division of the appellant, the rules of which division provided for compulsory arbitration. The courts have held that the clause quoted does not compel the contracting parties to submit to arbitration. The claim that a custom of the trade exists to the effect that under a contract containing the clause quoted or a similar clause, compulsory arbitration is a part of the contract, is not supported by a preponderance of the evidence and, therefore, the action of the appellant in expelling the petitioner because of its refusal to submit to arbitration was not justified.

It was not necessary for the petitioner to demand reinstatement before applying for a mandamus order, for the petitioner had previously applied for an order which was denied, and furthermore, the general conduct of the board of managers of the appellant was such as to justify the petitioner in believing that any demand for reinstatement would be denied.

The contention by the appellant that the petitioner submitted its case to the managers of the appellant and thereby waived its right to a mandamus order cannot be sustained because the facts show that the petitioner never submitted its rights to the managers at all, but simply insisted that it should not be disciplined for refusing to arbitrate.

Inasmuch as the petitioner was unjustifiably expelled from membership in the appellant, a peremptory mandamus order is granted requiring the appellant to restore the petitioner to its full rights as a member.

APPEAL by the defendant, The Silk Association of America, from a peremptory mandamus order of the Supreme Court, entered in the office of the clerk of the county of New York on the 21st day of December, 1925, resettling a prior order dated May 22, 1925, annulling a resolution of the defendant suspending the petitioner from membership in the defendant and directing defendant to restore the petitioner to its full rights as a member, and also from a judgment for costs in favor of the petitioner entered in pursuance of said order entered in said clerk's office on the 21st day of December, 1925.

*Walter Gordon Merritt* of counsel [*Austin, McLanahan & Merritt*, attorneys], for the appellant.

*David Steckler* of counsel [*Hays, Podell & Shulman*, attorneys], for the respondent.

Order affirmed, with ten dollars costs and disbursements, on the opinion of LYDON, J., at Special Term.

Present — DOWLING, P. J., MERRELL, MARTIN, O'MALLEY and PROSKAUER, JJ.

The following is the opinion of the Special Term:

LYDON, J.  The question in dispute in the proceeding herein has been before this court on three prior occasions, but in different forms.  There have been three opinions written by the Appellate Division in this department, all of which deal with different phases of this controversy, and after reading the said decisions I have concluded that every question involved in this controversy has been passed upon with the exception of the one question of fact which is now before me, to wit, whether under this form of contract of sale the obligation to arbitrate was generally recognized within the association.  The petitioner was a member of the Silk Association of America, but was not a member of the Raw Silk Division. It appears that the parent body had established certain machinery for the arbitration of disputes arising between the members, but, as has been held and defined by the Appellate Division in this department, it was entirely voluntary.  The rules, however, of the Raw Silk Division would seem to be compulsory as to arbitration. However, these rules affected only the members of the Raw Silk Division of the association, of which the petitioner was not a member.  Furthermore, it has been decided that the clause in the contract of sale that " sales are governed by Raw Silk Rules adopted by the Silk Association of America " could not be interpreted as meaning that the parties to this contract were obliged to arbitrate any differences arising, in the absence of evidence that the minds of

the parties met in making the contract and clearly understood that arbitration was included.   There is no by-law, provision or rule of any kind of the association which makes arbitration compulsory upon its members where differences may arise between them, but said by-laws do provide for arbitration of disputes, *which may voluntarily be referred* to the arbitration committee.   Upon the trial a great deal of evidence was given on behalf of the petitioner tending to show that there was no *recognized custom* in the association or in the silk trade to the effect that all controversies arising between merchants dealing in silk, and who had contracts containing said clause, were to be arbitrated by the association, and, on the other hand, the respondent offered evidence tending to show the existence of such a custom.   Obviously, if such a custom prevailed, then it might well be said that in the making of this contract the minds of the parties did meet and that arbitration would have been mandatory under the terms of the contract.   As to customs and usages, it has been said that custom is such usage as has acquired the force of law.   (17 C. J. 446; *Walls* v. *Bailey*, 49 N. Y. 464.) It is that length of usage which has become law.   (1 Bouvier Law Dict. [Rawle's 3d Rev.] 742.)   The essential elements of a custom or usage are: " It must be ancient; certain and uniform; compulsory; consistent; general; continued; notorious; reasonable; and not in contravention of law " or public policy, and acquiesced in. (17 C. J. 449.)   I also find that " a custom must be compulsory, and not left to each one's option to obey it."   (17 C. J. 453.)   Further, " it must be acquiesced in by all persons acting within the scope of its operations."   (17 C. J. 467.)   In the case of *Sipperly* v. *Stewart* (50 Barb. 62) the court (at p. 68) said: "A custom, in order to become a part of a contract, must be so far established and so far known to the parties, that it must be supposed that their contract was made in reference to it.   For this purpose the custom must be established, *and not casual* — uniform *and not varying* — general *and not personal*, and known to the parties."   Again, in the case of *Rickerson* v. *Hartford Fire Insurance Co.* (149 N. Y. 307) the court (at p. 316) said: " Usage is a matter of fact, not of opinion, and must be shown by those who have observed the method of transacting the particular kind of business as conducted by themselves and others."   Also, in the case of *McDonald* v. *Acker, Merrall & Condit Co.* (192 App. Div. 123), the court (at p. 126) said: "A general custom is established only by proof of instances and not by characterization or generalizations made by witnesses." If the petitioner by refusing to arbitrate has not violated any *rule, custom or by-law* of the association, or has not done anything prejudicial to the best interests of the association, then it is entitled

First Department, April, 1927.                    [Vol. 220

to be reinstated in its membership. Upon the question as to whether or not it has been established upon this trial that such a custom existed, the following facts are presented by the evidence: That this proceeding was initiated in the association by a letter dated January 19, 1921, sent by the General Silk Importing Company to the complaint committee, wherein the complainant alleged that it had entered into contracts with the Gerseta Corporation, one of which was dated May 12, 1919, for twenty-five bales, and the other December 3, 1919, for one hundred bales. As to the contract of May 12, 1919, for twenty-five bales, which is the first mentioned in the letter of complaint to the respondent, there was no demand for arbitration made at any time by the General Silk Importing Company prior to the date of said letter. The evidence shows that the correspondence prior to that date, with the exception of a letter of December 18, 1920, from the petitioner to the General Silk Importing Company, and its reply dated December 21, 1920, was limited exclusively to a discussion of the undelivered portion of thirty-five bales under the contract of December 31, 1919, which the petitioner had refused to take, claiming that the contract called for August delivery and the time for delivery had expired. Evidence was adduced to show that the controversy between the General Silk Importing Company and the petitioner began with a letter dated December 1, 1920, written by the said silk importing company to the Gerseta Corporation, the petitioner herein, complaining that thirty-five bales remained due against said contract, the delivery of which, by the terms of said contract, should have been made to the petitioner in August, 1920. It further appears from the evidence that on December 21, 1920, the General Silk Importing Company wrote a letter to the Gerseta Corporation asking " whether you are willing to settle the present controversy according to the rules and regulations of the Silk Association, * * * failing in which we shall reluctantly be obliged to put our claim in the hands of our attorney." On December 27, 1920, it again wrote, requesting a reply, and concluded: " We do not want to go to law before obtain ng an answer from you * * *." On January 6, 1921, its attorneys wrote suggesting arbitration before the Silk Association; otherwise " we are instructed to begin action in this matter unless you are willing to arbitrate it." It is also worthy of note that in the letter of January 19, 1921, which the General Silk Importing Company sent to the complaint committee, it asked the association to " take the necessary steps to compel the Gerseta Corporation to submit their contention, in accordance with the rules and constitution of our association." This was the first intimation by the General Silk Importing Company that it believed that under

the rules and constitution arbitration was mandatory. The conduct of the General Silk Importing Company in its early complaint to the petitioner in reference to the contract, threatening legal action if it did not consent to arbitration, would indicate that there was no such thought entertained by the officers of the General Silk Importing Company that arbitration, by custom, in the Silk Association was mandatory, and this, therefore, would have a strong tendency to lead one to the conclusion that the minds of the parties to the contract did not meet on the point that arbitration under this contract was understood to be mandatory. Numerous letters of the General Silk Importing Company, as well as letters from its attorneys, to the petitioner herein, all suggest going to law unless the petitioner *consented* to arbitration. Upon receiving notice from the complaint committee the Gerseta Corporation advised it that it refused to submit this dispute to arbitration by the Silk Association of America; whereupon the committee on complaints adopted the following resolution, to wit:

" WHEREAS, the Gerseta Corporation having entered into certain contracts for the purchase of silk, which contracts were by the terms thereof to be governed by the Raw Silk Rules of The Silk Association of America, including provisions for arbitration, and Whereas, a dispute growing out of said contracts having subsequently arisen between the parties, and the Gerseta Corporation having refused to submit the dispute to arbitration as provided for in the Raw Silk Rules of The Silk Association of America, and Whereas, a complaint was subsequently filed against the Gerseta Corporation on account of its refusal to arbitrate said dispute in accordance with the terms of said contract, and said dispute having been brought on for hearing, after due notice, before this committee, it is hereby

"*Resolved,* that the Committee recommends that the Gerseta Corporation be expelled from The Silk Association of America."

The evidence presented to the board of managers on which it founded its suspension order does not contain a word as to any prevailing custom in the association or among its members requiring arbitration. It does not appear from the transcript of the evidence that the board even considered the question whether a custom existed, or based its decision upon its knowledge of such a custom. The only reference to a custom to be found in the said minutes is the statement of Mr. Goldsmith in his colloquy with Mr. Steckler, which appears on page 4 of Exhibit 45, as follows: " We feel that *possibly* there was a moral obligation to comply with the custom of the trade such as other members had been accustomed to do; and why they had refused to arbitrate when they had agreed to a

contract subject to the rules of the Silk Association; why we met with that refusal." (Italics mine.) This statement of Mr. Goldsmith falls far short of meaning that there was any fixed custom such as the law would annex to the contract, otherwise he would have spoken of the obligation as a legal and not a moral obligation, and as one actually existing and not in the range of possibility. When the meetings of September 14 and 21, 1921, were held by the board of managers of the association, the matter of enforcing arbitration on this contract had already been presented for legal adjudication to the Special Term and Appellate Division, and those courts had decided that there was no arbitration provision in the contract. (*Matter of General Silk Importing Company, Inc.,* 198 App. Div. 16, 21.) Following is the resolution of the board of managers adopted at the meeting of September 21, 1921:

"WHEREAS, it appears after due hearing and investigation by the Committee on Complaints and the Board of Managers of the Silk Association of America that the Gerseta Corporation, a member of this association, has violated the rules of this association and its word and agreement, refusing to arbitrate certain differences with the General Silk Importing Company, Inc., a member of this association, and has been guilty of conduct prejudicial to the best interests of the association; *Resolved* that said Gerseta Corporation be, and hereby is, suspended from membership in this association until such time as it submits the differences in question to arbitration in accordance with such agreement and the rules of this association."

It is quite clear that on September 21, 1921, the date when the suspension resolution was adopted, the board of managers knew of the decision of the Special Term and Appellate Division, and, in fact, the association, through its counsel, had filed a brief on the appeal as *amicus curiæ* in an attempt to obtain a reversal of the decision of the Special Term. The president of the association testified that counsel had advised the board that, irrespective of the decision of the Supreme Court, if, in its opinion, sufficient evidence had been adduced to show that the petitioner acted in violation of its agreement and contrary to the rules of the association, the board could proceed with its determination. No fault can be found with that advice, and it is only referred to for the purpose of showing knowledge on the part of the board of the court's decision. In the two applications by the General Silk Importing Company to the Special Term to compel arbitration under this contract there was no mention of the existence of a *custom.* Moreover, the letters which passed between the parties to the contract in which the request for arbitration was made indicate that

such request was founded on the assumption that the raw silk rules were the rules of the Silk Association and were binding on all members, and that the Gerseta Corporation had violated such rules by refusing to arbitrate.   The complaints submitted by the General Silk Importing Company to the complaint committee of the association were based on the same assumption.   The resolution of suspension of the board of managers was also based upon violation of " the rules of this association   *  *  *   in refusing to arbitrate."   No finding, however, was made by the board of the existence of a custom. The resolution of the board was founded on the petitioner's refusal to arbitrate and nothing else.   The respondent upon the trial called a number of witnesses in the attempt to establish the fact that a *custom to arbitrate* existed under such a contract as the one under consideration.   All of these witnesses testified that their contracts contained provisions to the effect that the sale should be governed by, regulated by, or was subject to, the raw silk rules, but that the clause was not always the same as the one in the contract at issue, and they all claimed that there existed a belief that such a provision compelled them to arbitrate.   Upon cross-examination, however, some of those witnesses admitted that in many of the contracts for the purchase of silk there was a provision to the effect that " any differences arising under this contract do not invalidate same, but, unless otherwise agreed, are to be settled by arbitration."   Also that one of the largest houses in the business employed a form as follows: " Claims that are not allowed by us must be submitted to the Silk Association of America for arbitration within thirty days of delivery or be considered abandoned."   Among the different forms used in these silk contracts, referring to the raw silk rules, there is one which reads as follows: " Raw Silk Rules are by reference made a part of the contract."   Such a provision would leave no doubt as to the fact that all of the silk rules, including that of compulsory arbitration, were a part of the contract and that the minds of the contracting parties met on that condition.   During the two years prior to the suspension of the petitioner, and at or about the time when the board of managers were considering the complaint of the General Silk Importing Company against the petitioner, there were pending in the courts of this State numerous controversies involving contracts for the sale of silk.   One of the principal litigants was the Raw Silk Trading Company, a member of the association, and that company employed a contract containing the provision that the Silk Association rules were by express reference made a part of the contract, and during that period such company was the plaintiff in three actions under such contracts.   There was other litigation also existing during

the same period, and the evidence shows that no action or proceeding was ever taken by the Silk Association or its board of managers to discipline in any way any of the parties to such litigation, although at least one party was always a member of the association. Comparing the clause in the contracts of the Raw Silk Trading Company with that used in the contract at issue, it is obvious that the Raw Silk Trading Company's contracts clearly require arbitration on all subjects of dispute, while the clause used in the Gerseta Corporation contract can be quite properly referred to as *not* being so worded as to suggest that arbitration was mandatory as to all disputes arising under the contract, as was clearly set forth by Mr. Justice GREENBAUM in *Matter of General Silk Importing Company, Inc.* (200 App. Div. 786), when (at p. 793) he said: " Moreover, even a member of the Silk Association of America familiar with the rules of the raw silk division, reading the printed phrase that the sale was ' governed by the rules of the Raw Silk Division,' without a specific reference including arbitration, would be justified in thinking that the rules applicable to the sale were intended to relate only to such of the rules as affect the rights and obligations of the parties under the contract, and not to a remedy for enforcing such rights and obligations." The evidence offered upon the trial further showed that between the years 1900 and 1920 there had been about seventy-five arbitrations within the Silk Association, and forty-nine cases were disposed of between the years 1915 and 1919. If there did exist in the years 1919, 1920 and 1921 the alleged custom which the respondent has set up in its answer, how then can we account for the fifteen litigations that were shown upon the trial to have been prosecuted in the Supreme Court in this department between members of the association, which actions were begun between the years 1916 and 1922? No objection or protest was ever raised as against these litigants by the Silk Association of America, notwithstanding the fact that the contracts litigated in some instances contained a clause identical with that of the contract in issue, which many of the respondent's witnesses testified was understood in the trade to carry with it compulsory arbitration. I am strongly of the opinion that it has not been established by preponderating evidence that a *custom* existed in the silk trade requiring arbitration of such a contract. A custom in order to become a part of the contract must be general, uniform, *and not casual*, and must be known to the parties. Furthermore, if there was any such customary interpretation in the silk trade as respondent claims, how can it be accounted for that some merchants made a specific provision in their contracts for arbitration in addition to referring to the

raw silk rules? Again, why this volume of litigation? Answering another point raised by the respondent, I hold it was not necessary for the petitioner to demand reinstatement before applying for this alternative writ, for two reasons; *first,* the petitioner had previously applied for a writ of mandamus, which was denied, and *secondly,* the general conduct of the board of managers was such as to justify the petitioner in implying that they would refuse any such demand. The respondent herein lays great stress on the fact that the petitioner having submitted its case or defense to the Silk Association managers, has waived its right to bring this proceeding. I cannot agree with such contention. The position taken by the petitioner and its counsel before the Silk Association of America in this controversy was consistent throughout, and it repeatedly refused to submit the matter to arbitration, and never submitted anything to the board of managers or the arbitration committee to pass upon other than to point out that it would be a great wrong to discipline it for refusing to arbitrate. An examination of the proceedings before the board at the meetings of September 14 and 21, 1921, clearly shows that no subject or conduct other than the refusal to arbitrate was at any time discussed or considered by the board. Therefore, the words in the resolution of suspension that it " has been guilty of conduct prejudicial to the best interests of the association " must be interpreted to mean that such prejudicial conduct flowed solely from the petitioner's refusal to arbitrate and had no bearing whatsoever upon any other conduct of the petitioner. It is quite true that if there was any evidence before the board of managers which would tend to establish a violation of a by-law or rule, or other conduct prejudicial to the best interests of the association, the board would have had the right to reach a conclusion which might be different from that reached by the courts in interpreting a contract, and the ruling of such board would not be interfered with if it was based upon any evidence to support it. In this proceeding, however, it has not been shown that the petitioner violated any by-law or rule; and the contention that it violated its word and agreement in refusing to arbitrate and was guilty of conduct prejudicial to the best interests of the association is not established by the evidence, because of a total failure of proof of the existence of a custom in the trade that all contracts containing the clause, " sales are governed by Raw Silk Rules adopted by the Silk Association of America," are to be interpreted to mean that all differences arising thereunder must be arbitrated by the arbitration committee of the Silk Association of America. My conclusion, therefore, is that there was no evidence before the board of managers which justified the resolution of suspension of

September 21, 1921. Accordingly, the petitioner is entitled to a mandamus order requiring the respondent to restore to the petitioner its full rights as a member of the Silk Association of America, and the resolution of the board of managers, suspending the petitioner as a member of the respondent, must be annulled for lack of evidence to support it.

Submit findings on notice.